TRIMBLE *v.* MORRISH.

1. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—ABSOLUTE PRIVILEGE.

A communication absolutely privileged — as, for instance, words spoken by a judge in his judicial capacity in a court of justice—is not actionable, even though spoken maliciously.

2. SAME—QUALIFIED PRIVILEGE.

Where the privilege is qualified, the communication is not actionable if made in good faith, but is actionable if made maliciously, that is, with actual malice.

3. SAME—QUALIFIED PRIVILEGE—WHAT CONSTITUTES.

Qualified privilege extends to all communications made bona fide, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty; and the

privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation.

4. SAME—INTEREST CREATING QUALIFIED PRIVILEGE.

A druggist who has an arrangement with a physician under which the physician has all his prescriptions filled at the druggist's store, in consideration of which the druggist pays a part of the physician's office rent, has an interest in the physician's business sufficient to render privileged a communication made by the druggist to the physician in good faith relative to the character of a young woman employed by him in his office.

5. SAME—MALICE—EVIDENCE—FALSITY OF CHARGE—SUFFICIENCY.

Where a communication is privileged, the plaintiff cannot recover without proving affirmatively, not only the falsehood of its contents, but also that it was published with express malice.

6. SAME — MALICE — EVIDENCE — REFUSAL TO NAME INFORMANT — SUFFICIENCY.

Malice in making a privileged communication is not to be inferred because defendant declined to name his informant upon being told that if he would do so he would not be further troubled, and stated that the story was told him in confidence and he did not desire to implicate any other person in it.

7. SAME—WORDS USED—SUFFICIENCY.

Malice can be inferred from the words of a privileged communication only when the words used are such that the communication bears upon its face evidence of malice.

Error to Chippewa; Steere, J. Submitted April 17, 1908. (Docket No. 114.) Decided May 1, 1908.

Case by Meda Trimble against Nicholas D. Morrish for slander. There was judgment for plaintiff, and defendant brings error. Reversed.

*Sharpe & Handy* (*Warner, Sullivan & Wiley*, of counsel), for appellant.

*M. M. Larmonth* and *F. T. McDonald*, for appellee.

This is a slander suit. Plaintiff recovered a verdict and

judgment in the circuit court. The slander was spoken in a confidential conversation had by defendant with one Dr. Thomas N. Rogers. Dr. Rogers was a physician in practice in the city of Sault Ste. Marie. Plaintiff was his employé in charge of his office. Defendant was a druggist in the city of Sault Ste. Marie. Between Dr. Rogers and defendant there existed this arrangement: The doctor agreed to have all his prescriptions filled at defendant's store, and in consideration thereof defendant agreed to pay a part of the doctor's office rent. During the existence of this arrangement, the conversation in question occurred. It was testified to by the doctor. He testified as follows:

"Mr. Morrish called me back of the prescription case in the drug store. * * * I think he started by saying if I knew what kind of a girl I had in my office. * * * He said he had heard she had been giving entertainments or seances of some kind in the McTavish Block, and that her name had been mentioned with some parties around town. * * * He did not know anything about her personally. It was only reports. I said, then I could not keep her any longer. Well, he said he would not, if he were me, let her go until he would make some inquiry and found out, and I said I couldn't do that; that even if I knew it was untrue, I couldn't keep her, but it was his suggestion that I should keep her until I should find out more about it. He said girls had hard enough time of it making their own living without anybody knocking. * * * After Mr. Morrish told me these things regarding Miss Trimble, I talked the matter over again with him before discharging her. I had told Mr. Morrish to investigate further, if he could find out if there was any truth in these reports, and a few days afterward he told me that he had learned that part of what he had told me, at least, was not true; that is, about holding these performances. * * * I think he advised me to keep her, and I said I couldn't, even if I knew there wasn't a word of truth in any of the reports, because I said it would be injurious to my work to do so after such reports were going about, even if they were untrue."

The witness also testified that no third person heard this conversation, and that he soon thereafter discharged

plaintiff from his employment. The defendant insisted that, under these circumstances, the communication was privileged, and that a verdict should be directed in his favor. The trial court submitted the question to the jury who, as already stated, rendered a verdict in plaintiff's favor.

CARPENTER, J. (*after stating the facts*). The important question raised in this court is that above indicated, viz., Was defendant entitled to a directed verdict upon the ground that the communication was privileged? In disposing of this question we shall assume, and the briefs of counsel assume, that the testimony of Dr. Rogers, as above stated, is true. In the law of slander there are two classes of privileged communications. There are communications which are absolutely privileged; and there are communications which have a qualified privilege. A communication absolutely privileged—as, for instance, words spoken by a judge in his judicial capacity in a court of justice—is not actionable, even though spoken maliciously. Where the privilege is qualified, the communication is not actionable if made in good faith. It is actionable if made maliciously; that is, with actual malice. It is not claimed that the communication in question is absolutely privileged. It is claimed that it is qualifiedly so. Says Mr. Justice CHAMPLIN, speaking for this court in *Bacon* v. *Railroad Co.*, 66 Mich. 170:

" Qualified privilege * * * extends to all communications made bona fide, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation."

Within this rule defendant had a qualified privilege to make the communication in question. He had an interest in the business of Dr. Rogers. He had become possessed of information which affected that business. It

was clearly his duty to communicate it to the doctor. It follows that, in making this communication, he committed no actionable wrong, unless he exceeded the limits of his privilege—unless he acted maliciously. Is there evidence that he acted maliciously? Plaintiff insists that there is. Her counsel say that malice is to be inferred from the falsity of the statement. The contrary is the rule.

"The falsity of the charge alone will not establish malice so as to authorize a recovery, if the charge be privileged, and only becomes sufficient when coupled with evidence tending to show that plaintiff made the charges knowing them to be false, or with other evidence tending to show malice." 25 Cyc. p. 524.

Said this court in *Edwards* v. *Chandler*, 14 Mich. 471:

"Where a communication is privileged, the plaintiff cannot recover without proving affirmatively, not only the falsehood of its contents, but also that it was published with express malice."

See, also, *Konkle* v. *Haven*, 140 Mich. 472.

It is said that malice may be inferred because defendant declined to name his informant. No authorities are cited in support of this contention, and it does not appear to us to be sound. Defendant was told that, if he would name his informant, he would not be troubled. He declined to do this, saying:

"The story was told to me in confidence, and I do not desire to implicate any other person in it."

This is the precise course that a high-minded person would have taken. He would have taken that course, not because he was actuated by a desire to save a wanton wrongdoer, but from considerations of true manliness. Only a despicable character would have availed himself of the privilege of escaping responsibility by exposing another to the danger which threatened him. Surely, because one does just what he ought to do, it should not be said that his conduct furnishes evidence of malice.

Plaintiff also insists that malice may be inferred from the words of the privileged communication. He relies upon the following statement in the opinion of *Bacon* v. *Railroad Co.*, supra:

"The jury may find the existence of actual malice from the language of the communication itself as well as from extrinsic evidence"—citing cases.

This does not mean, as the argument of plaintiff's counsel seems to assume, that the inference of malice can always be drawn from the language of a privileged communication. No such proposition was before the court. What was meant was this: That when a privileged communication contains on its face evidence of malice, that evidence may be used to prove malice. This is made clear by the application of the principle in that case, and by the authorities cited in its support. Respecting this point, the law is correctly stated in the following quotation from the opinion of the supreme court of Pennsylvania in *Mulderig* v. *Wilkes-Barre Times*, 215 Pa. 474:

"If there is that in the publication which furnishes a basis for reasonable inference that malice was back of it, the burden remains with the party charged to establish, either its truth, or the probable ground for believing it true. When such is not the case, there must be some evidence beyond the mere fact of publication; but there is no requirement as to what the form of evidence shall be. It may be intrinsic, from the style and tone of the article."

It is not contended that the communication in question contained on its face any evidence of malice. It clearly did not. We conclude, therefore, that defendant had a right to a directed verdict, upon the ground that the communication was privileged. No other complaint demands consideration.

Judgment reversed, and a new trial ordered.

Grant, C. J., and Blair, Montgomery, and McAlvay, JJ., concurred.