PEOPLE *v.* GREGG.

1. Criminal Law — Embezzlement of Promissory Note — Larceny—Negotiable Instruments.

   The maker of a promissory note may be guilty of its larceny or embezzlement from the payee to whom he has delivered it, although his indebtedness is unaffected by such act.

2. Same—Delivery of Note as Payment.

   Respondent, who was charged with embezzlement of a note executed and delivered by him to the payee, was rightly found guilty of embezzling the property of such payee, under testimony showing that the payee bought of him some lambs to be delivered later, surrendering said note to respondent to be applied on the price of the lambs, that the lambs did not belong to respondent, but to his wife, and they were later disposed of to other parties, and that respondent refused to return the note or pay it, and claimed to have satisfied the indebtedness.

3. Same—Trial—"Feloniously."

   The instruction by court to jury at the trial of respondent that embezzlement meant the wrongful or fraudulent appropriation to one's use of money or goods left in his possession by another, that the respondent should not be found guilty unless he intended when he took the note to deprive the payee of its value, and unless intent to wrong was present no crime was committed, sufficiently defined the offense under 3 Comp. Laws, § 11570, without using or explaining the word "feloniously."

4. Same—Words and Phrases.

   "Feloniously" imports that an act was done with an unlawful and wicked intent, or with purpose to commit a crime.

Error to Eaton; Smith, J. Submitted April 18, 1912. (Docket No. 135.) Decided May 4, 1912.

Perry Gregg was convicted of embezzlement. Affirmed.

*Russell R. McPeek*, Prosecuting Attorney, for the people.

*Garry C. Fox* and *Rosslyn L. Sowers*, for respondent.

STEERE, J. The respondent, Perry Gregg, was convicted in the circuit court of Eaton county in June, 1911, of embezzling, or fraudulently converting to his own use, a certain promissory note, of the alleged value of $35.84, belonging to another and previously delivered to him for a particular purpose. The information filed against him contained two counts. The first was framed under section 11570, 3 Comp. Laws, which is as follows:

"If any person to whom any money, goods or other property which may be the subject of larceny, shall have been delivered, shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, he shall be deemed by so doing to have committed the crime of larceny."

To this was added a second count, charging simple larceny. The jury found respondent guilty "as charged in the first count of the information, the same being the count charging the defendant with embezzlement of the note under paragraph 11570, of the Compiled Laws of 1897."

The note had been previously given by respondent, who was the maker, to William H. Van Auken, the complaining witness herein, who was the payee. It fell due October 15, 1909. The prosecution claimed it was never paid, but that respondent, having received it from the owner for a certain specified purpose, embezzled and fraudulently converted it to his own use, thereby committing the crime of larceny.

The evidence introduced by the respective parties as to the manner in which respondent acquired possession of the note was irreconcilable. Testimony offered by the prosecution tended to show that about October 1, 1910, the note being then about a year past due and unpaid, Van Auken visited respondent, who was a farmer, and negotiated a purchase from him of some lambs which were to be delivered about the 1st of November following; that the agreed price was 6 cents per pound and $5 extra, and

any additional rise which might occur in the market before the time of delivery; that he told respondent the collection of his note was a reason why he wished to make the purchase; that he then gave him the note to be applied in part payment of the purchase price, and said to him, "If you take the note, you will know your lambs are sold and I will know they are bought;" that the lambs were never delivered as agreed, and some time subsequent to the date set for their delivery he interviewed respondent on the subject, who then stated in profane and violent language that he owed Van Auken nothing, did not have any note which belonged to him, had sold the lambs and spent the money, and would do nothing about the note, refusing to return the same when demanded. It was the claim and testimony of respondent that he had never sold the lambs, which belonged to his wife, to Van Auken; that there was some talk on the subject about the time claimed, in which Van Auken tried to buy them, but no agreement was reached or note then given to him; that he owed Van Auken nothing at that time, having previously taken up the note in question, paying the same in full, in cash, to Van Auken, amounting, in principal and interest, to $40. It is manifest that the witnesses thus testifying could not be honestly mistaken. One side or the other must have deliberately falsified. These issues of fact were decided by the jury in favor of the prosecution.

The case is before us on exceptions to refusal of the court below to rule that the evidence was insufficient to support the information, and to instructions given the jury; the errors relied on being thus stated:

" (1) The refusal of the trial judge to direct a verdict of not guilty.
" (2) The failure of the trial judge to give the jury such a charge as defendant was entitled to under the law.
" (3) The refusal of the court to grant a new trial."

The first question, therefore, to consider, is whether the testimony of the prosecution, taken as a whole, contained facts sufficient to constitute the offense charged. If so, it

was for the jury to decide, under proper instructions. It is the theory and claim of respondent that the testimony of the prosecution shows at most but a contract of purchase and sale and a breach of such contract—a part payment of the agreed purchase price by delivery and acceptance of the note and an agreement by respondent to deliver the lambs, for which he could only be held liable in a civil suit for resulting damages; that, when Van Auken delivered the note in part payment on the purchase, he parted with both possession and title to it and passed the same to respondent, who cannot be found guilty of embezzling or stealing his own property.

This case does not involve the much discussed "shadow line" between false pretenses and larceny, or between larceny and embezzlement. The provisions of the statute under which the information is laid dispose of the latter, and the evidence fails to show any misrepresentations by respondent as to existing facts by which complaining witness was misled. False promises or false assurances as to future transactions are not false pretenses in law. Though, like bonds, certificates of stock, or paper money, the intrinsic value of a promissory note is insignificant, it has real value in the right of property which it represents, and is itself property which may be the subject of larceny. The fact that respondent had originally given this note to Van Auken, who had a civil right of action against him, independent of the note, would not defeat a criminal prosecution. The maker of a note may be guilty of its larceny or embezzlement from the payee to whom he has given it, though his indebtedness is unaffected by the act. *Commonwealth* v. *Eichelberger*, 119 Pa. 254 (13 Atl. 422, 4 Am. St. Rep. 642).

Must we conclude from the people's testimony that the note became respondent's property? Van Auken voluntarily delivered it and parted with the possession, but did he transfer and part with the title also? Its delivery was for a specified purpose, as part payment on the purchase price of the lambs, a payment on account. There is no

proof it was applied to such purpose; defendant denies that it was, and all the testimony is to the effect that it was not. It is not inferable from the people's testimony that Van Auken intended to forgive the debt and surrender the note, and pass title therein to respondent, whether the lambs were delivered or not. It is fairly deducible from the transaction that the note was delivered conditionally; that the ownership and title to the note remained in Van Auken, only to pass when the deal was consummated, and he had received the consideration therefor by delivery of the lambs. Respondent kept the note and sold the lambs to others, putting it beyond his power to do that which would fulfill the condition under which he received the note, and which would invest him with the title. The jury could fairly infer from the testimony as a whole that he did not apply it in part payment on the property purchased and never intended to do so. He himself testifies that he did not. We cannot agree that the payee of the note is shown to have parted with the title. The principle involved in this question has been held to be the actual intent of the owner as disclosed by what he said and did at the time he delivered possession of the property. In the case of *Queen* v. *Russett*, 2 Q. B. Div. 312, there was purchase and sale of a horse, with part payment and promised future delivery, which was never made. The seller was prosecuted for larceny of the part payment. It was claimed that the sale was fraudulent; the seller removing the animal elsewhere under circumstances indicating he never intended to deliver it. Under the proof in that case a material question was the distinction between false pretenses and larceny, but whether or not the payor of a part payment parted with the title to the money paid was involved. The respondent contended that the purchaser, who testified, "I never expected to see the £8 back, but to have the horse," parted absolutely with both the possession and property in the money paid, and therefore respondent's taking it was not larceny, but, if any crime, obtaining money by false pre-

tenses.    In confirming a conviction, the court said, amongst other things:'

" In my judgment the money was merely handed to the prisoner by way of deposit, to remain in his hands until completion of the transaction by delivery of the horse. He never intended, or could have intended, that the prisoner should take the money and hold it, whether he delivered the horse or not.    *    *    *    I need only to refer to the contract, which provides for payment of the balance on delivery of the horse, to show how impossible it is to read into it an agreement to pay £8 to the prisoner whether he gave delivery of the horse or not.    It was clearly only a deposit by way of part payment of the price of the horse, and there was ample evidence that the prosecutor never intended to part with the property in the money when he gave it into the prisoner's possession."

An examination of the charge of the court, with reference to the numerous allegations of error launched against it, leads to the conclusion that most of the claimed errors are founded on the contentions of respondent already discussed and decided, and to review them in detail would be but repetition.    The charge is very full and detailed, covering, with unusual emphasis and prominence, the various rules of law relative to burden of proof, reasonable doubt, and presumption of innocence designed to safeguard the rights of the accused.    The portions of the charge touching simple larceny, under the second count in the information, require no consideration, as the respondent was not convicted under that count.    The court fairly submitted defendant's claim, based on the opposing testimony, to the jury to determine, as an issue of fact, with proper explanation of their province and duties in passing upon the credibility of witnesses.    As to what constituted the statutory offense of which respondent was convicted, the court instructed the jury, in part, as follows:

" But if, on the other hand, you find that he received the note under the circumstances as claimed by the people, and afterwards at any time conceived the idea of con-

verting the note to his own use, and did fraudulently so convert said note, then he would be guilty of embezzlement, and you should so designate in your verdict. * * * Now, by the term 'convert'—that is, converting the note to his own use—or 'embezzle' is meant simply the wrongful or fraudulent appropriation to one's own use of money or goods left in his possession by another. From what I have said to you, gentlemen, you will understand that to convict in this case you should be satisfied beyond a reasonable doubt that Mr. Gregg had an intent either when he took the note or later on to deprive Mr. Van Auken of its value. * * * The intent is the essence of the offense, and, unless the intent to wrong is present at the time of the commission of the offense, then no crime has been committed."

Objection is made to the use of the word "fraudulently," instead of "feloniously," in instructing the jury as to what constituted the offense, and that the jury were not instructed that to constitute the crime the act must have been done with a felonious intent. The court followed the language of the statute in that respect. If the respondent fraudulently converted or used the property as specified in the act he did it, under the provisions of the act, with a felonious intent. We cannot see how any assistance would have been given the jury by using, or even defining, "feloniously." It is not imperative that the jury shall be given technical definitions, but it is sufficient if the purport of the words as applied to their duties in deciding the facts be explained to them. It is true that, in order to convict, they must have found a felonious intent. "Feloniously" is a technical word of the legal vocabulary, originally essential in indictments charging any offense involving forfeiture of goods and lands to the crown, or, in this country, any crime involving death or imprisonment in the penitentiary. It imports that the act charged was done with a mind bent on that which is criminal, with an unlawful and wicked intent. When applied to a violation of a criminal statute, if the facts proven show the statute was intentionally violated and establish a felony, then the crime was committed felo-

niously. *State* v. *Snell*, 78 Mo. 240. The language of the charge more than once clearly covered this proposition.

We find no prejudicial error in the case, and the conviction is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.