## BOLTON *v.* WALKER.

1. LIBEL AND SLANDER — TIME, PLACE AND ATTENDING CIRCUMSTANCES—MALICE—PRESUMPTIONS. .

   The time, place and attending circumstances are an important consideration in a charge of slander, and not only may the occasion and surrounding circumstances rebut the presumption of malice but a distinction must be recognized in many particulars between the same or similar defamatory words, when spoken in passion or in the heat of controversy and when deliberately written or printed.

2. SAME—PRIVILEGED COMMUNICATIONS.

   There is an element of privileged communication in words spoken by one who is *ex officio* a member of the board of estimates of the city of Detroit at a regular meeting of such board and in discussion of a matter of public interest charging a member thereof with being susceptible to improper influences.

3. SAME.

   Where the occasion and attending circumstances are not in dispute the question of privilege in uttering slanderous words is for the court.

4. SAME—PRIVILEGED COMMUNICATIONS—DIRECTED VERDICT.

   Where a privilege in uttering slanderous words is found by the court to be absolute a verdict should be directed for the defendant.

5. SAME—INSTRUCTIONS.

   In case of a *quasi* or qualified privilege, the questions of

slander or no slander, malice or no malice, are usually matters of fact for the jury, but the court must instruct the jury as to the nature and legal effect of the qualified privilege and its bearing upon the consideration of the facts in issue.

6. SAME—QUALIFIED PRIVILEGE—RULE.

The rule of qualified privilege in the law of slander relates more particularly to private interests, where the occasion casts upon the defendant a duty, or right, to communicate to another in regard to some matter of special concern to one or both or to others for the protection of society, or some interest he represents.[1]

7. SAME.

If the privilege in uttering slanderous words is absolute the questions of good faith and absence of malice are immaterial.

8. SAME—MATTERS OF PUBLIC CONCERN—ABSOLUTE PRIVILEGE.

Absolute privilege in uttering slanderous words applies more directly to matters of public concern, in regard to which it is considered for the general welfare that persons should be permitted to express their views more freely and fearlessly than in regard to private matters or persons.

9. SAME.

Words spoken by the president of the poor commission of the city of Detroit, who is *ex officio* a member of the city board of estimates, with power to participate in the deliberations and proceedings of such board, but without right to vote upon measures brought before it, at a regular meeting of the board, and in relation to a matter of public interest, imputing that a member of the board was susceptible to improper influences, by bribery or otherwise, are absolutely privileged, since such board has a function in taxation demanding the exercise of semi-legislative discretion.

Error to Wayne; Mayne, J., presiding. Submitted

[1] Authorities discussing the question of effect of qualified privilege of communication between members of an association or of a private corporation, are collated in a note in 26 L. R. A. (N. S.) 1081.

As to burden of proving malice in case of qualified privilege communication, see note in 3 L. R. A. (N. S.) 696.

April 18, 1917.   (Docket No. 91.)   Decided September 27, 1917.

Case by Edwin C. Bolton against Wiliam M. Walker for slander. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*John E. Moloney* (*Monaghan, Monaghan, O'Brien & Crowley*, of counsel), for appellant.

*Washington I. Robinson*, for appellee.

STEERE, J.  This is an action for slander, in which plaintiff recovered a verdict and judgment of $1,000 against defendant in the circuit court of Wayne county as damages for remarks in reference and reply to him by defendant at a public meeting of the board of estimates of the city of Detroit, of which both were members, held at the city hall in Detroit on April 25, 1913. Plaintiff is an attorney at law, who has been engaged in the practice of his profession in Detroit for many years, and had served several terms as a member of the board of estimates of that city. Defendant is president of Walker Bros. Catering Company, a corporation engaged in operating lunch rooms and doing a general catering business in Detroit. At the time of events involved here he was a member and president of the city poor commission, which consisted of seven members, and, as its president, *ex officio* a member of the city board of estimates, with power to participate in its deliberations, but without the right to vote upon measures brought before it.

The controversy in which the language complained of was used arose over an item of $600,000 in the annual report of estimates for care of the poor, made by the commissioners of the poor to the city council for its guidance in making up the city budget for the ensuing year; it being contemplated that sum would, if ap-

proved, be expended in building units to three hospitals in Detroit, which it was claimed the rapid growth of the city made imperative. Defendant was advocating and plaintiff opposing this proposition, over which considerable public interest had been manifested, owing to the congested condition of the city's hospitals, and it having been under discussion at a previous citizens' meeting held in the Cadillac Hotel. Under the local government of Detroit, its fiscal year ends July 1st, and preparatory to the city council providing to meet its expenses for the ensuing year the various departments of the city submit itemized estimates of their anticipated needs for the following year, which the city council passes upon and adopts, decreases, or increases as it may determine. Under its charter the city also has a board of estimates to go over the budget after the council has passed it. This body is given no power to increase the estimates as determined by the council, but may disallow or decrease the same, its action being final, and as passed upon by it the estimates become the basis of the city tax to be levied the coming year.

Defendant had seen, but was not acquainted with, plaintiff. It was the custom of the mayor of the city to hold what are called "cabinet meetings" in the latter portion of each fiscal year before the council passed upon the estimates furnished by the departments. These were usually attended by the heads of the several departments and such members of the council and board of estimates as cared to participate in their discussion. At one of their meetings this item for hospitals was called up, and an alderman named Barnett stated he had canvassed the board of aldermen in regard to it, and that 23 or 24 members would oppose it. Plaintiff was present, and then said it would not be approved by the board of estimates. Defendant was also present with the superintendent of

the poor commission and inquired of him who plaintiff was. The superintendent gave his name, and said:

"Mr. Bolton is a strong member of the board of estimates. If you expect to carry this appropriation, you will have to see Mr. Bolton and Mr. Barnett."

The secretary of the poor commission, when talking the matter over with defendant, also advised him it would be well to see Mr. Bolton, who was an influential member of the board of estimates, and try to get him to withdraw opposition to the item. There is practically no dispute as to what was done and said at the meeting of the board of estimates on April 23d. Defendant and a Dr. Hall had been delegated by the board of poor commissioners to urge favorable consideration of this hospital item at that meeting. Dr. Hall spoke, and defendant took part in the deliberations of the board, in advocacy of it, while plaintiff spoke several times against it, contending that it was an illegal subterfuge, and charged that the year before, when defendant was also a member of the board, an illegal appropriation for that department had been made. In replying, defendant made use of the language which constitutes the basis of this action. It is set out with variations in the three separate counts of plaintiff's declaration, and the recollection of witnesses varies in unimportant particulars as to the phraseology; but it is undisputed that the material portions of what defendant said in the course of the controversy are substantially as follows:

"Estimator Bolton makes much of the fact that he is open to argument. Mr. Bolton has never been open to argument. I was told, when I first came forward with my proposition for the care of the sick poor, that I would have to see Alderman Barnett and Estimator Bolton; that if I got them I would have both the council and the estimators. I want Mr. Bolton to understand that the poor commission absolutely refuses to do any lobbying to get through a worthy measure."

Plaintiff arose and said, "Who told you I had got to be seen?" and defendant answered that he was so told at the mayor's cabinet meeting. Plaintiff demanded that he name them, and defendant said, "There is one of them on the floor of this house now." Plaintiff then said, "You have got your foot in it this time; I will make you prove it"; and defendant replied, "I will prove it, if necessary." Both parties were angry at this time, several persons were standing up, and there was much confusion. Of the general trend of events one of plaintiff's witnesses testifies:

"This meeting was a very warm one, and there had been considerable excitement, in view of the discussion of the hospital matter. Before this particular altercation between Mr. Bolton and Mr. Walker occurred, several warm and fiery speeches had been made by several, and the general discussion lasted about one hour and a half or two hours, and Bolton had spoken on the question two or three times. Mr. Bolton was one of the active leaders in the opposition."

It is not shown that defendant at any time charged plaintiff with having in fact committed any corrupt or criminal act. The most that can be said of the language set out in the declaration, and shown to have been used by defendant, giving it the meaning charged in the innuendo, is the imputation that plaintiff was susceptible to improper influences, by bribery or otherwise. There is no charge or claim that defendant used any words implying dishonesty or corrupt tendencies, except the word "see," and perhaps, in connection with it, "lobby." The *inducement, colloquium* and *innuendo* of the declaration are similar in the three counts, charging in practically the same phraseology that defendant uttered the defamatory language alleged in the colliquium,

"meaning and intending thereby by the usual, ordinary, common, and popular accepted use, meaning, sig-

nificance and interpretation of the said words and language; * * * to aver and charge that the said plaintiff was dishonest, disreputable, and corrupt, and susceptible to bribery, and that said plaintiff had and would corruptly accept a bribe and sell his influence and vote upon said measure for money or other remuneration, thereby charging him, said plaintiff, with dishonesty, and that he, said plaintiff would commit a felony and an offense for which plaintiff could be imprisoned under section 11312 of Miller's Compiled Laws of the State of Michigan (3 Comp. Laws 1915, § 14979)."

By reason of which it is alleged that plaintiff—

"is greatly prejudiced in his good name, fame, credit, and reputation; wherefore the said plaintiff says that he is injured, and has sustained damage to the amount of," etc.

Aside from this, there is no averment of damages, special or otherwise, and no proof of any beyond what inferences may arise from the language used.

Aside from alleged defects urged against the declaration, defendant pleaded and claims that the language charged and shown to have been indulged in by him on that occasion was not spoken nor uttered maliciously against plaintiff, nor the word "see" used with the intent and meaning placed upon it by the *innuendoes* of plaintiff's declaration, nor were the words charged and used susceptible of a defamatory meaning; that in any eventuality they were spoken at and during the deliberations of the city board of estimates, of which both were members, at a regular meeting, and in the discussion of a matter of public interest properly before it, and then called up for consideration; that the occasion made them privileged, and, if otherwise improper, no right of action could be maintained for that reason. It is well settled that the time, place, and attending circumstances are an important consideration in a charge of this kind. Not

only may the occasion and surrounding circumstances rebut the presumption of malice, but a distinction is recognized in many particulars between the same or . similar defamatory words, when spoken in passion or the heat of controversy and when deliberately written or printed, and that which would be actionable in libel may not support an action for slander. Newell on Libel and Slander (3d Ed.), § 49.

That there was an element of privileged communication in this case by reason of the occasion seems clear. Whether the privilege was absolute or qualified is a further question. When the occasion and attending circumstances are not in dispute the question of privilege is for the court. If a privilege is found by the court to be absolute, a verdict should be directed for the defense. If a *quasi* or qualified privilege, the questions of slander or no slander, malice or no malice, are usually matters of fact for the jury; but it yet remains for the court to instruct the jury as to the nature and legal effect of the qualified privilege and its bearing upon their consideration of the facts in issue. Neither was done in this case. Counsel preferred requests for instructions upon both propositions, alternatively as to qualified privilege, but they were not given. Without quoting at length, it may be said that the charge fairly instructed the jury as to the general principles of slander in a case where the question of privilege is not involved, but failed to instruct them as a matter of law that the occasion was privileged in either degree, or to give defendant the protection either degree affords.

The rule of qualified privilege relates more particularly to private interests, where the occasion casts upon the defendant a duty, or right, to communicate to another in regard to some matter of special concern to one or both or to others for the protection of society, or some interest he represents, and the courts sometimes hold such privilege a complete defense to

otherwise actionable utterances, as a matter of law, when satisfied no malice is affirmatively shown; *Trimble* v. *Morrish*, 152 Mich. 624 (116 N. W. 451, 16 L. R. A. [N. S.] 1017). If the privilege is absolute the questions of good faith and absence of malice are immaterial.

Absolute privilege applies more directly to matters of public concern, in regard to which it is considered for the general welfare that persons should be permitted to express their views more freely and fearlessly than in regard to private matters or persons. In Newell on Slander and Libel (3d Ed.), § 506, the general rule is thus fairly stated:

"All actions for words so spoken are absolutely forbidden, even if it be alleged and proved that the words were spoken falsely, knowingly, and with express malice. This rule is, however, confined to cases in which the public service or the administration of justice requires complete immunity—for example, words spoken in legislative bodies, in debates, etc., in reports of military officers on military matters to their superiors; words spoken by a judge on the bench and by witnesses on the stand. In all such cases the privilege afforded by the occasion is in law an absolute bar to an action for defamation. In these cases the plaintiff cannot be heard to say that the defendant did not act under the privilege, that he did not intend honestly to discharge a duty, but maliciously availed himself of the occasion to injure his reputation."

That doctrine is discussed and finds support in *Wachsmuth* v. *National Bank*, 96 Mich. 426 (56 N. W. 9, 21 L. R. A. 278); *Trebilcock* v. *Anderson*, 117 Mich. 39 (75 N. W. 129), and *Madill* v. *Currie*, 168 Mich. 561 (134 N. W. 1004). In the instant case the alleged defamatory words were spoken in debate, by a public officer, in discussing a matter of public concern, in which both he and plaintiff were officially interested and had a duty to perform, and on an occasion when it was properly up for consideration by a

legally constituted public body, of which both were members, which had jurisdiction to dispose of the subject under debate and was then in session at a regularly convened meeting.

The board of estimates was created by legislative enactment and given a power of restraint in relation to taxation formerly vested in the electors. *Board of Park Com'rs* v. *Mayor of Detroit*, 29 Mich. 343; *Robinson* v. *City of Detroit*, 170 Mich. 168 (65 N. W. 10). The power of taxation is legislative, and rests in the legislature or municipalities or municipal bodies duly created by law to which such power is delegated. Cooley on Taxation (3d Ed.), pp. 100, 101; *People* v. *Hurlbut*, 24 Mich. 44, 70 (9 Am. Rep. 103). This board is given by the legislature a function in taxation, negative in its character, it is true, but demanding the exercise of at least semi-legislative discretion, with power and control in that municipality to disallow any item, parts of items, or the gross sum of different funds proposed and provided by act of the common council to be raised by taxation. Even if its reviewing power be thought to call for the exercise of a judicial rather than legislative discretion, the protective privilege of a member would be the same. The subject before the board and under discussion when the alleged defamatory language was used by one of its members involved the exercise of one or both of those discretionary functions.

Under the authorities cited, and many others to which they lead, we are well satisfied as a conclusion of law on the undisputed facts that the occasion presents a privilege absolute, and defendant's request for a directed verdict should have been granted.

The judgment is therefore reversed, without a new trial.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.