STEWART v TROUTT

Opinion of the Court

1. Motions—Hybrid Motions—Accelerated and/or Summary Judgment.

A hybrid motion for accelerated and/or summary judgment is looked upon with disfavor.

2. Judgment—Accelerated Judgment—Absolute Privilege—Court Rules.

The language "or other disability of the moving party" contained in the court rule regarding accelerated judgments is not intended to include the defense of absolute privilege (GCR 1963, 116.1[5]).

3. Motions—Summary Judgment—Assumption of Truth—Court Rules.

A motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted tests the legal sufficiency of a claim as determined from the pleadings alone; for the purposes of such a motion, both at the trial and appellate levels, every well-pled allegation in the complaint is assumed to be true (GCR 1963, 117.2[1]).

4. Motions—Summary Judgment—Tests—Court Rules.

The test for a motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted is whether the plaintiff's claim, on the plead-

References for Points in Headnotes

[1–4] 47 Am Jur 2d, Judgments § 1158.
  73 Am Jur 2d, Summary Judgment § 26.
[5–7, 9–11] 50 Am Jur 2d, Libel and Slander § 125 *et seq.*
  57 Am Jur 2d, Municipal School, State, and Tort Liability § 246.
  Libel and slander: actionability of statement imputing incapacity, inefficiency, misconduct, fraud, dishonesty, or the like to public officer or employee. 53 ALR2d 8.
  Constitutional aspects of libel or slander of public officials. 95 ALR2d 1450.
[8] 50 Am Jur 2d, Libel and Slander §§ 195–198.
[12, 13] 50 Am Jur 2d, Libel and Slander §§ 192–194.

ings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

5. LIBEL AND SLANDER—MUNICIPAL EMPLOYEES—GOVERNMENTAL IMMUNITY—OFFICIAL DUTIES—ABSOLUTE PRIVILEGE.

A municipal employee is entitled to an absolute privilege in a defamation action only where the alleged defamatory statements were made in the course of carrying out an official duty.

6. LIBEL AND SLANDER—ABSOLUTE PRIVILEGE—ACCELERATED JUDGMENT—OFFICIAL DUTIES.

An accelerated judgment in an action for defamation granted on the basis of absolute privilege should be reversed and remanded to give the appellant an opportunity to amend the complaint to allege facts disclosing that the appellee was not acting in the course of carrying out an official duty when the alleged defamatory remarks were made where the appellee's motion for accelerated judgment did not attack the failure of the appellant to allege such facts.

CONCURRENCE BY D. E. HOLBROOK, J.

7. LIBEL AND SLANDER—PUBLIC OFFICIALS—ABSOLUTE PRIVILEGE—QUALIFIED PRIVILEGE.

*The privilege afforded to public officials in a slander action varies with the situation, therefore, there may be an absolute privilege, a qualified privilege, or no privilege at all.*

8. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—ABSOLUTE PRIVILEGE—QUALIFIED PRIVILEGE—LOOSE GOSSIP.

*A communication absolutely privileged is not actionable even though false and maliciously published; a qualified privilege may be overcome by proof of actual malice; whereas loose gossip, thoughtless or malevolent, qualifies for no privilege at all.*

9. LIBEL AND SLANDER—PUBLIC OFFICIALS—TESTS—PRIVILEGED COMMUNICATIONS—ESSENTIAL FUNCTIONS—OFFICIAL POSITIONS.

*The test as to the nature of a privilege in a defamation action against a public official is whether the making of the statement that contained the allegedly defamatory remarks was an essential function of the official position held by the defendant.*

10. LIBEL AND SLANDER—PUBLIC OFFICIALS—ABSOLUTE PRIVILEGE—QUALIFIED PRIVILEGE.

*Alleged slanderous statements by a mayor regarding an investi-*

gation into possible unethical conduct by a city councilman: (a) are absolutely privileged if made during an exercise of any essential function of the mayor's office; (b) are qualifiedly privileged where the publication of the statements is not closely related to the mayor's official duties; and (c) are not privileged if the mayor has no powers or duties which would justify such investigation and statements.

11. LIBEL AND SLANDER—PUBLIC OFFICIALS—ABSOLUTE PRIVILEGE—QUALIFIED PRIVILEGE.

A trial court must look at all the facts, the city's charter, and the entire context of the alleged slanderous statement by a mayor to determine whether the statement is subject to either an absolute or a qualified privilege.

12. LIBEL AND SLANDER—ABSOLUTE PRIVILEGE—LIMITED CIRCUMSTANCES.

The doctrine of absolute privilege as a defense in a defamation action exists in Michigan under certain limited circumstances.

13. LIBEL AND SLANDER—ABSOLUTE PRIVILEGE—FACT DISPUTES—QUALIFIED PRIVILEGE—FACTFINDING—LEGAL ANALYSIS.

An accelerated judgment based on absolute privilege was improperly granted in a defamation action where there were many factual disputes still existing regarding whether an absolute or a qualified privilege applied to the fact situation, since the determination of the nature of a privilege requires extensive factfindings and legal analysis.

Appeal from Wayne, Thomas J. Foley, J. Submitted November 3, 1976, at Detroit. (Docket No. 26246.) Decided January 17, 1977.

Complaint by James Stewart against Terry Troutt and William S. Munger seeking damages for defamation. Accelerated judgments for both defendants. Plaintiff appeals as to defendant Troutt only. Reversed and remanded.

*Eugene S. Hoiby,* for plaintiff.

*Barris, Sott, Denn & Driker* (by *Stephen E. Glazek* and *Louis J. Burnett),* for defendant.

Before: BASHARA, P. J., and D. E. HOLBROOK and
N. J. KAUFMAN, JJ.

BASHARA, P. J. The appellant, a Romulus city
councilman, brought this action for defamation
against the appellee, the mayor of Romulus. The
complaint alleged that the appellee made a num-
ber of defamatory statements at a city council
meeting, regarding the appellant's failure to pay
property taxes on certain property.

The appellee moved for "accelerated and/or
summary judgment" pursuant to GCR 1963,
116.1(3) and (5) and 117.2(1). The motion alleged a
number of grounds, including the assertion that
the appellee was addressing a meeting of a munici-
pal legislative body and was absolutely privileged.
The trial judge, without enumerating the specific
ground of GCR 1963, 116.1(5), granted appellee's
motion for accelerated judgment on the basis of
absolute privilege.

A hybrid motion for "accelerated and/or sum-
mary judgment" is looked upon with disfavor.
*Knapp v Dearborn,* 60 Mich App 18, 26; 230 NW2d
293 (1975), *Hobbs v Michigan State Highway De-
partment,* 58 Mich App 189, 190, n 1; 227 NW2d
286 (1975), *lv granted,* 394 Mich 837 (1975).

Appellee premised his motion for accelerated
judgment on two grounds. The first ground was
GCR 1963, 116.1(3), "the party asserting the claim
lacks legal capacity to sue". Nowhere in the mo-
tion is appellant's capacity to bring this action
challenged. We, therefore, conclude that this
ground is inapplicable.

The other ground upon which appellee brings
his motion for accelerated judgment is GCR 1963,
116.1(5). It states:

"(5) the claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

By process of elimination the only ground that could conceivably apply to absolute privilege is "other disability of the moving party".

The Committee Notes reveal that GCR 1963, 116.1 was drafted from the substance of Court Rule No. 18 (1945). 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Committee Notes, p 324. The language of GCR 1963, 116.1(5) represents (with one addition, payment) the grouping of the defenses listed in subsections (e) through (j) of Court Rule No. 18 (1945). Subsection (i) provided:

"(i) That the cause of action did not accrue against defendant because of his infancy or other disability."

See *Bush v Oscoda Area Schools,* 72 Mich App 670, 681, n 8; 250 NW2d 759 (1976) (PETERSON, J., concurring).

It was not the intention of the drafters in drafting GCR 1963, 116.1 to "enlarge or diminish" the defenses available under Court Rule No. 18 (1945). 1 Honigman & Hawkins, *supra.* Motions brought pursuant to GCR 1963, 116.1 were intended to be restricted to the specific claims set forth in the rule. 1 Gilmore, Michigan Civil Procedure Before Trial (1964), § 12.500, p 565. Subsection (i) of Court Rule No. 18, § 1 (1945), was specifically aimed at such disabilities as infancy, insanity, or incompetency. See generally 1 Searl, Michigan Pleading and Practice (1934), § 121, p 183. See also *Bush v Oscoda Area Schools, supra.*

Court Rule No. 18, § 1(i) was based on Rules 106–110 promulgated under the New York Civil Practice Act of 1921. Court Rule No. 18 (1931), notes p 34. Reference to New York decisions discloses that "other disability" has been applied to competency situations. See *Anonymous v Anonymous,* 166 Misc 861; 2 NYS2d 663 (1938).

For the above stated reasons, we do not believe that the language of "other disability of the moving party" contained in GCR 1963, 116.1(5), was intended to include the defense of absolute privilege.

The remaining ground asserted by appellee was that the appellant failed to state a claim upon which relief could be granted. GCR 1963, 117.2(1). Although the trial judge granted the motion on the basis of accelerated judgment, we may still consider whether summary judgment would be appropriate based on absolute privilege, since there is no prejudice to the appellant. *Cf. Unger v Forest Home Twp,* 65 Mich App 614, 616–617, n 1; 237 NW2d 582 (1975), *Birch Run Nursery v Jemal,* 52 Mich App 23, 24, n 1; 216 NW2d 488 (1974), *modified on other grounds,* 393 Mich 775; 224 NW2d 282 (1974). The appellant was permitted to argue against the application of absolute privilege.

A motion for summary judgment brought under GCR 1963, 117.2(1), merely tests the legal sufficiency of the claim as determined from the pleadings alone. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), *lv den,* 391 Mich 816 (1974), 1 Honigman & Hawkins, *supra,* Committee Notes to GCR 1963, 117, pp 353–355. For the purposes of that motion, both at the trial and appellate levels, every well-pled allegation in the complaint is assumed to be true. *Bielski v Wolverine Insurance Co,* 379 Mich 280, 283; 150 NW2d 788 (1967). The

test is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972).

The motion asserts that the alleged defamatory statements were made by a municipal officer addressing a municipal legislative body and were absolutely privileged. The time, place, and attending circumstances surrounding the defamation are an important consideration, but not dispositive. *Bolton v Walker,* 197 Mich 699, 705; 164 NW 420 (1917). A municipal employee is only entitled to an absolute privilege if the alleged defamatory statements were made in the course of carrying out an official duty. See *Brunn v Weiss,* 32 Mich App 428, 430–431; 188 NW2d 904 (1971), and cases cited therein.

Appellant's nearest allegation to whether the appellee was carrying out an official duty, is that the appellee "failed to act timely to direct the matter to the proper authorities pursuant to" MCLA 211.150; MSA 7.208, and MCLA 211.152; MSA 7.210. These statutes provide procedures whereby the state tax commission may assess property tax deficiencies. However, this cannot be taken as an allegation that the appellee was not acting in the course of carrying out an official duty when the alleged defamations arose.

Since the appellant's complaint does not allege that the appellee was acting outside the course of carrying out an official duty, and appellee's motion does not attack this failure, the proper remedy is to reverse and remand. The appellant should be given an opportunity to amend his complaint to allege *facts* that disclose the appellee was not acting in the course of carrying out an official

duty. If appellant is unable to so allege,[1] summary judgment for failure to state a claim, GCR 1963, 117.2(1), should be entered in favor of appellee.

Reversed and remanded in accordance with this opinion. Costs to abide the outcome.

N. J. KAUFMAN, J., concurred.

D. E. HOLBROOK, J. *(concurring).* Plaintiff James Stewart, Romulus city councilman, filed suit against the mayor, Terry Troutt, and the city attorney, William S. Munger, seeking damages in the amount of $2,000,000 for allegedly slanderous remarks made by the mayor at a city council meeting and in a report prepared by the city attorney. On August 13, 1975 the court granted Munger's motion for accelerated judgment. This order has apparently not been appealed. On October 3, 1975, however, an order granting accelerated judgment in favor of defendant Troutt was also entered. Plaintiff appeals from this decision regarding Troutt as a matter of right.

There may have been a hearing, but there is no transcribed record on appeal. The facts here have been gleaned from the pleadings and briefs submitted. Furthermore, our task is made somewhat difficult because the trial court's order made no finding, or even recital, of the facts therein.

The instant case necessarily calls for a review of the law relating to privilege in a slander action against a public official. A recent decision of this Court appropriately described the operation of a privilege in a slander action.

" 'The term privilege relates to a situation or occasion

---

[1] It should be noted that the present complaint cites a number of conclusions of law, rather than statements of fact. If, on remand, plaintiff is only able to cite conclusions, summary judgment is proper.

in which the importance of the criticism published justifies a modification or indeed a withdrawal of the protection normally afforded to our citizens' reputations. The privilege thus afforded is not, however, a constant. It varies with the situation. At one extreme we have loose gossip, thoughtless or malevolent. Here there is no privilege. At the opposite extreme we have absolute privilege. In between we have qualified privilege.' [*Harrison v Arrow Metal Products Corp,* 20 Mich App 590, 609–610; 174 NW2d 875 (1969).]

"A communication absolutely privileged is not actionable, even though false and maliciously published, whereas proof of actual malice will overcome a qualified privilege. *Trimble v Morrish,* 152 Mich 624, 627; 116 NW 451 (1908), *Lawrence v Fox* [357 Mich 134; 97 NW2d 719 (1959)], *supra, Timmis v Bennett,* 352 Mich 355; 89 NW2d 748 (1958), Prosser, Torts (4th ed), § 114, pp 776–777." *Tocco v Piersante,* 69 Mich App 616, 629; 245 NW2d 356, 362 (1976), *lv applied for.** 

The trial judge herein without opinion held that the defendant mayor had an absolute privilege. Our duty is to ascertain if the trial court was correct.

In *Brunn v Weiss,* 32 Mich App 428; 188 NW2d 904 (1971), our Court was called upon to determine if the trial court's finding of an absolute privilege was correct. The facts in that case indicated that a school board published a newsletter dealing with school affairs and that the plaintiffs contended that they were libeled by this publication. The Court held:

"Under the foregoing authorities [omitted] we must conclude that under some circumstances the members of the school board would have an absolute privilege. However, we also conclude that in this case the privilege is conditional. In the cases finding an absolute privilege the allegedly defamatory statements were made in the course of carrying out an official duty. The making of the statements that contained the allegedly

---

* Leave to appeal denied, 399 Mich 882.—REPORTER.

defamatory remarks was an essential function of the
official position held by the defendants. The publishing
of a newsletter is not in the same category. The publica-
tion of a newsletter may be closely enough related to
the official duties of the board members to give them a
conditional privilege, but there is no absolute privi-
lege." *Brunn,* at 431; 188 NW2d at 905.

The test as to the nature of the privilege is
whether the making of the statement that con-
tained the allegedly defamatory remarks was an
essential function of the official position held by
the defendant. Therefore, we must know whether
the investigation of allegedly unethical conduct of
the plaintiff was within the power of the city
council and whether the mayor was acting in his
official capacity in investigating plaintiff and in
making these allegedly slanderous remarks about
him. If so, then defendant had an absolute privi-
lege and no action can be brought. Analogizing to
*Brunn, supra,* if this investigation and the publica-
tion of these comments was not closely related to
defendant's official duties then only a qualified
privilege results, requiring a showing of malice in
order to recover. Plaintiff did allege the existence
of malice on the part of defendant in making these
statements. See, *New York Times Co v Sullivan,*
376 US 254; 84 S Ct 710; 11 L Ed 2d 686; 95
ALR2d 1412 (1964). If the defendant had no pow-
ers or duties which would justify such investiga-
tion and statements, then no privilege could at-
tach. However, if these statements were made
during an exercise of any essential function of his
office, the mayor had an absolute privilege.

It appears that defendant made these state-
ments regarding plaintiff's failure to pay certain
taxes and that this occurred in April of 1975 at a
city council meeting. *Brunn, supra,* and *Tocco,*

*supra,* have indicated that an absolute privilege is found in a narrowly defined number of instances.

Appropriate guidelines as to statements made by a mayor were first set out in a case decided by our Supreme Court over 75 years ago. *Trebilcock v Anderson,* 117 Mich 39; 75 NW 129 (1898). The Court decided that statements made by a mayor during his message to the city council relaying his reasons for a veto of their action were entitled to absolute privilege protection. The Court noted:

"There are two views that may be taken of this writing, and the circumstances under which it was published, *i.e.,* filed: *First,* that it was conditionally privileged; *second,* that it was absolutely privileged. If it was only conditionally privileged, the question of malice should have been submitted to the jury upon the testimony offered; but we must consider it as absolutely privileged, under the decision in the case of *Wachsmuth v Merchants' Nat Bank,* 96 Mich 427; 56 NW 9; 21 LRA 278 [1893], unless there is that in the message itself which was not a proper subject for communication to the council, by reason of its not being pertinent to the subject. * * *

"It was the duty of the mayor to veto the resolution if, in his opinion, the interests of the city required it; and it was proper for him to advise the council of his reasons therefor in his veto message, as required by the charter. In this, he was warranted in stating any reasons legitimately bearing upon the relation of the plaintiff to city affairs, and the fitness of the association to influence them; and, if his privilege depends upon the question of pertinency, reasonable latitude should be permitted. Our examination of the article leads us to the conclusion that the entire message was pertinent to the subject, and that the same was privileged." *Trebilcock* at 40–41; 75 NW at 129.

Clearly statements made by a mayor during the exercise of his express power to veto are an essen-

tial function of his office. The trial court must look
at all the facts, the city charter, the entire context
of the statement to determine if it was properly
subject to an absolute privilege or only to a quali-
fied privilege.

Many decisions of our Supreme Court have indi-
cated that the doctrine of absolute privilege is
limited and must not be extended beyond recog-
nized fields. *Timmis v Bennett,* 352 Mich 355; 89
NW2d 748 (1958), *Raymond v Croll,* 233 Mich 268;
206 NW 556 (1925). Some jurisdictions have held
that under no circumstances shall an absolute
privilege attach to subordinate legislative bodies
such as city councils. *Mills v Denny,* 245 Iowa 584;
63 NW2d 222; 40 ALR2d 933 (1954), *McClendon v
Coverdale,* 57 Del 568; 203 A2d 815 (1964), *Cohen v
Bowdoin,* 288 A2d 106 (Me, 1972). See generally
*Richards v Gruen,* 62 Wis 2d 99; 214 NW2d 309
(1974). But see *Urchisin v Hauser,* 221 So 2d 752
(Fla App, 1969). Several states apparently have
accorded statutory protection to various public
officials. See *Carter v Jackson,* 10 Utah 2d 284; 351
P2d 957 (1960), *Frisk v Merrihew,* 42 Cal App 3d
319; 116 Cal Rptr 781 (1974). Many secondary
authorities have commented on the extension of
absolute privilege to members of municipal gov-
ernment. 3 Restatement Torts, § 590, pp 236–238,
particularly comment c; Harper & James, The
Law of Torts, § 5.23, pp 427–430; Prosser, Torts
(4th ed), § 114, pp 781–784; 50 Am Jur 2d, Libel
and Slander, § 222, pp 733–734. Comments in these
sources range from the Restatement comment c at
pp 237–238, which indicates that absolute privilege
is "not applicable to members of subordinate legis-
lative bodies" to Am Jur's observation at 733 that
"at least under some circumstances members of a
municipal council or the governing bodies of other
political subdivisions are entitled to the complete

defense afforded by absolute privilege for utter-
ances made by them during the course of official
proceedings". See also Anno., *Libel and slander:
statements or utterances by member of municipal
council, or of governing body of other political
subdivision, in course of official proceedings, as
privileged,* 40 ALR2d 941.

Nevertheless, this Court is bound by precedent
which indicates the existence of an absolute privi-
lege under certain circumstances. This Court is not
unmindful of the judicial trends and attitudes in
other states, and accordingly our review of foreign
as well as Michigan precedent indicates that an
absolute privilege should be limited. A qualified
privilege affords sufficient protection in most in-
stances for the public servant while at the same
time it does not discourage uninhibited robust and
wide-open debate on important public issues. See
*New York Times, supra.* Many of the arguments
made in *Mills v Denny, supra,* address these points
and are quite compelling.[1] It is interesting to note
that the Court in *Mills* expressly cited Michigan
cases as holding that an absolute privilege exists
as to municipalities and other subordinate bodies.
The Court therein disapproved of the early Michi-

---

[1] The Court in *Mills* made the following comments:

"It is our feeling that the welfare of society does not require the
individual here also to surrender his personal rights absolutely to
provide such immunity, though we concede perhaps the cases of abuse
would be few. We agree with the majority of the courts in other
jurisdictions and textbook writers in holding that the qualified privi-
lege adequately protects such public officials who in good faith make
bona fide statements upon any subject matter that are pertinent and
relevant to the question on the privileged occasion. Such immunity is
sufficient, for of itself it abrogates the rule that every defamatory
publication implies malice. There is no necessity, we feel, to go
further. Having determined that the utterances or publications of
members of a city council are not included in the absolutely privi-
leged communication, we must hold that the action of the trial court
in overruling the motion to dismiss was right." 245 Iowa at 593; 63
NW2d at 227; 40 ALR2d at 940–941.

gan cases cited. It is unfortunate that the Court in *Mills* did not recognize that the extension of absolute privilege to municipalities in Michigan is quite limited. The Court therein stated:

"While it is well settled that the court must determine whether or not the occasion was privileged, the court must also, we think, determine the extent of the privilege or immunity. It is the occasion or circumstance, as well as the office, that calls forth the immunity, not the individual as such. *Callahan v Ingram,* 122 Mo 355; 26 SW 1020 (1894)." 245 Iowa at 592; 63 NW2d at 227; 40 ALR2d at 940.

In *Mills* these arguments led to a holding denying the existence of an absolute privilege. Nevertheless, binding precedent in Michigan indicates the existence of an absolute privilege under certain circumstances.

Without recitation to any facts, the trial court granted an accelerated judgment.[2] However, fac-

[2] The defendant-appellee moved for accelerated and/or summary judgment pursuant to GCR 1963, 116.1(3) and (5) and 117.2(1). The trial court granted accelerated judgment. Ordinarily, when the trial court grants a motion on the basis of accelerated judgment, we may still consider whether summary judgment would be appropriate. *Unger v Forest Home Twp,* 65 Mich App 614; 237 NW2d 582 (1975). A motion for summary judgment pursuant to GCR 1963, 117.2(1) is not appropriate in the instant case. A motion for summary judgment pursuant to GCR 1963, 117.2(3) was more nearly proper than a motion for accelerated judgment. It does appear that there are a number of disputed facts herein which must be resolved. Although the court may consider pleadings, affidavits, depositions, documents, admissions, or even testimony in determining whether an issue of fact exists, it may not weigh testimony, determine credibility, choose between conflicting inferences or pass upon the truth of affidavits in disposing of the motion. *See,* 1 Honigman & Hawkins, Michigan Court Rules Annotated, 1975 pocket part, pp 93–94. It appears that there are disputed facts herein which must be resolved by the trier of fact and not by motion for summary judgment. However, it may be possible depending on future action of the parties to sufficiently narrow and clarify the disputed issues of fact so as to allow a motion for summary judgment pursuant to GCR 1963, 117.2(3). Plaintiff has stated a cause of action herein and raised a number of crucial factual issues.

tual disputes do exist, the resolution of which are necessary to determine the nature of defendant's privilege, if any.

Plaintiff alleged in his complaint that defendant spoke maliciously and defamed plaintiff on April 8, 1975 during a city council meeting. He also alleged that defendant knowingly failed to act in a timely manner to direct the matter for investigation to the proper authority. Plaintiff also alleged malice. Plaintiff in his brief in response to the motion for accelerated judgment further alleged excessive publication. He also maintained that the council did not request a legal opinion and investigation of plaintiff. Plaintiff also contended that when the defamatory statements were made, the matter was not on the agenda nor pertinent to business of the city council. Plaintiff in his brief alleged that the slander in the instant case did not occur during any law making activity of the council, that no debate was in progress and that the remarks were not in relation to a motion or measure pending before the council.

The defendant by motion and affidavit maintained that in response to a letter from a "concerned citizen" he, as mayor, undertook an investigation. He received a legal opinion from the city corporation counsel on April 21, 1975. After receipt of this opinion he brought the opinion to the attention of the council on May 6th by having the opinion read to the council by the city clerk. Defendant maintained that his actions were done pursuant to his legal power and authority. He maintained that the city council is empowered to investigate misconduct and that, therefore, he, as mayor, had authority to so investigate. It is not known what prerequisites are necessary in order to authorize such an investigation. It is not known

factually if there was such authorization, nor if the council did in fact authorize the mayor to proceed as he did. It is not known if the mayor had such authority to do so on his own. In short, the entire factual context which surrounded the making of the alleged defamatory statements is not known.

As can be seen, there is not even agreement as to the date of the alleged defamation. Plaintiff maintained that he was defamed on April 8, 1975. Defendant maintained that the corporation counsel's legal opinion was read on May 6th, after receipt of the opinion letter on April 21st. Later in his brief in support of a motion for accelerated judgment, defendant does admit that on April 8th he "repeated" the contents of the letter from the concerned citizen to the council, but apparently maintained that the alleged defamatory remarks complained of by plaintiff occurred on May 6th. It is not known what prompted this repetition of the contents of the letter, once again illustrating the need for a complete picture as to the facts in order to resolve this dispute.

A determination of the nature of a privilege requires extensive factfindings. See *Weeren v Evening News Assn,* 379 Mich 475; 152 NW2d 676 (1967). There are many factual disputes in the instant case, including the date of the alleged defamation, the circumstances surrounding the issuance of these alleged defamatory statements, the existence of malice, whether or not an investigation was properly authorized pursuant to legal authority, whether or not there was excessive publication, whether or not the remarks were made pursuant to the proper conduct of city council business, to mention just a few. Because the outcome of this case may depend on whether or

not the defendant mayor's actions were subject to an absolute or qualified privilege, a determination which requires a legal and extensive factual analysis, a factual resolution must be made and an accelerated judgment herein was not proper. *Salzer v State Treasurer,* 48 Mich App 34; 209 NW2d 849 (1973). See also *Weeren v Evening News Assn, supra.*