RAYMOND v. CROLL.

1. LIBEL AND SLANDER—PRIVILEGE IS ABSOLUTE OR QUALIFIED.
    In the law of slander there are two classes of privileged communications, one which is absolute, and another which is qualified.[1]

2. SAME—ABSOLUTE PRIVILEGE LIMITED TO THREE CLASSES.
    Cases of absolute privilege are limited to three classes, viz., proceedings of legislative bodies, judicial proceedings, and communications by military and naval officers.[2]

3. SAME—QUALIFIED PRIVILEGE—GOOD FAITH.
    Where the privilege is qualified, the communication is not actionable if made in good faith.[3]

---

[1]Libel and Slander, 36 C. J. § 203; [2]Id., 36 C. J. §§ 223, 239, 240; [3]Id., 36 C. J. § 205.

4. SAME—COMMUNICATIONS OF STATE BUDGET DIRECTOR QUALIFIED-
LY PRIVILEGED.

Communications of the State budget director, in investigating
and reporting the financial standing of bidders on State
highway contracts, as required by the administrative
board, of which he was not a member, were not absolutely
privileged, but were qualifiedly privileged.[4]

5. SAME—QUALIFIED PRIVILEGE—PRESUMPTION OF GOOD FAITH.

Where the report of the State budget director to the ad-
ministrative board on the financial standing of bidders
on State highway contracts was qualifiedly privileged, the
presumption is that in making it he acted in good faith.[5]

6. SAME—EVIDENCE OF BAD FAITH OR DISHONEST PURPOSE PRE-
SENTS QUESTION FOR JURY.

If there is anything in said report or in the surround-
ing circumstances which shows bad faith or dishonest
purpose, the question as to whether it is actionable is
for the jury, but if not it belongs to the court as a matter
of law.[6]

7. SAME—EVIDENCE INSUFFICIENT TO SHOW MALICE.

In an action by an unsuccessful bidder on a State high-
way contract against the State budget director for slander,
evidence *held,* insufficient to show any malice in defend-
ant's report to the State administrative board on plain-
tiff's financial standing, or in the surrounding circum-
stances.[7]

8. SAME—PRESUMPTION OF GOOD FAITH MUST BE OVERCOME BY EVI-
DENCE.

To overcome the presumption of good faith of the State
budget director in reporting to the administrative board
the financial standing of plaintiff, the circumstances must
be such as to show that the director was actuated by
a bad motive, which led him to take advantage of the
occasion to injure plaintiff.[8]

9. SAME—MALICE NOT INFERRED FROM FACTS CONSISTENT WITH
GOOD FAITH.

Dishonesty of purpose may not be lightly inferred from
acts which are just as consistent with good faith as with
bad faith.[9]

[4]Libel and Slander, 36 C. J. § 243; [5]Id., 36 C. J. § 168; [6]Id., 37
C. J. § 550; [7]Id., 37 C. J. § 495; [8]Id., 37 C. J. § 497 (Anno); [9]Id.,
37 C. J. § 495.

10. SAME—PRESUMPTION OF GOOD FAITH NOT OVERCOME BY FACTS CONSISTENT WITH ITS EXISTENCE.

> Where the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the presumption of good faith has not been overcome, and there is nothing for the jury.[10]

11. SAME—MERE SUSPICION INSUFFICIENT TO TAKE CASE TO JURY.

> Circumstances creating mere suspicion of malice, amounting at most to a scintilla of evidence, do not warrant submitting the question of malice to the jury, and the trial court was in error in refusing to direct a verdict for defendant.[11]

Error to Gladwin; Smith (Guy E.), J. Submitted October 21, 1925. (Docket No. 40.) Decided December 22, 1925.

Case by Benjamin F. Raymond against Henry Croll for slander. Judgment for plaintiff. Defendant brings error. Reversed, and judgment ordered entered for defendant.

*Andrew B. Dougherty*, Attorney General, *O. L. Smith*, Assistant Attorney General (*John C. Shaffer*, of counsel), for appellant.

*Wilmot & Wilmot* (*Kinnane & Leibrand*, of counsel), for appellee.

McDONALD, C. J.   In an action for slander the plaintiff recovered a verdict and judgment against the defendant for $3,000 in the circuit court of Gladwin county.

The plaintiff lives on a farm in Grout township, Gladwin county. For five or six years prior to the time when the cause of action arose he had been engaged in the building of Covert roads in Gladwin county. He had never built any State award high-

[10]Libel and Slander, 37 C. J. § 550 (Anno); [11]Id., 37 C. J. § 550 (Anno).

ways.   In September, 1923, in response to a notice from the State highway department, he submitted a proposal for the construction of approximately four and three-quarters miles of State trunk line, M-18, near Skeels in Gladwin county, at a contract price of $47,960.   He was the lowest bidder.   But his bid was rejected and the contract was let to Russell & Russell, the next lowest bidder, for $53,672.73.

Mr. Croll, the defendant, is a State official entitled to be called budget director.   In addition to his other duties he was required by the State administrative board to purchase material for the construction of highways and to investigate the financial responsibility of bidders for State trunk line contracts.

When the plaintiff's bid was rejected he claims that he went to Lansing and there learned that, although he was the lowest bidder, he was not awarded the contract because Mr. Croll, the defendant, had reported to the administrative board "that he was not qualified to perform the contract, that he could not finance the job, that he had trouble in paying his men on former jobs, and had trouble with the district engineers." The plaintiff says that the statement made by Mr. Croll was not true, and was made by him with malice and for the purpose of injuring him and securing the contract for the next lowest bidder, with whom he was associated in business.   To recover his damages he has brought this suit.   His declaration contains two counts.   In the first he alleges damages to his "good name, fame, credit and reputation."   In the second he alleges damages for refusal to award him the contract and to his reputation and business.

The defendant's plea of the general issue was accompanied by the following notices of special defense:

(1)  Privilege.
(2)  An independent investigation of plaintiff's financial ability to complete the contract in question made subsequent to the alleged slander which resulted

in a refusal of the State administrative board to award the contract to the plaintiff.

(3) Justification.

At the close of the plaintiff's opening statement to the jury and at the close of his case, and again at the close of all the proofs, the defendant made a motion for a directed verdict. After the verdict there was a motion for a judgment *non obstante veredicto* and for a new trial. All of these motions were denied and a judgment entered on the verdict for the plaintiff. The defendant brings error.

The first question to be considered relates to the refusal of the circuit court to direct a verdict for the defendant. In support of this motion counsel for the defendant contended that the undisputed evidence showed the occasion on which the slander was published to be one of absolute privilege.

"In the law of slander there are two classes of privileged communications. There are communications which are absolutely privileged; and there are communications which have a qualified privilege. A communication absolutely privileged—as, for instance, words spoken by a judge in his judicial capacity in a court of justice, is not actionable, even though spoken maliciously. When the privilege is qualified, the communication is not actionable if made in good faith." *Trimble* v. *Morrish,* 152 Mich. 624.

"Cases of absolute privilege are not numerous, and the courts refuse to extend their number. They are divided into three classes. (1) Proceedings of legislative bodies; (2) Judicial proceedings; and (3) Communications by military and naval officers." Newell, Slander and Libel (4th Ed.), § 351.

It is the policy of the courts to keep the doctrine of absolute privilege within these narrow limits, because, as Mr. Newell says, "It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare."

"Generally speaking, absolute privilege is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used. It applies more directly to matters of public concern, such as language used in legislative, judicial and executive proceedings; and it is not intended so much for the protection of those engaged in the service, as it is for the promotion of the public welfare." 36 C. J. pp. 1240, 1241.

Our court recognizes the rule of absolute privilege, but it has repeatedly refused to extend its application beyond the necessities of the judicial, legislative, and military occasions. *Mundy* v. *Hoard,* 216 Mich. 478; *Bolton* v. *Walker,* 197 Mich. 699 (Ann. Cas. 1918E, 1007); *Trebilcock* v. *Anderson,* 117 Mich. 39; *Wachsmuth* v. *National Bank,* 96 Mich. 426 (21 L. R. A. 278).

We know of no authority for holding that the defendant was entitled to the benefit of an absolute privilege on the occasion in question. He was not a member of the State administrative board, and had no duties or relations to any legislative body that would clothe him with such a privilege.

Circumstances determine the question of privilege; and it has been said that the occasion is one of qualified privilege.

"Where the circumstances of the occasion cast upon the defendant the duty of making a communication to a certain other person to whom he makes such communication in the *bona fide* performance of such duty." Newell, Slander and Libel (4th Ed.), § 389 (1).

Within this rule the defendant was clothed with a qualified privilege on the occasion of making the statement in question. If he had any information concerning the financial responsibility of the plaintiff or his ability to perform the contract, it was his duty to communicate it to the highway commissioner or the State administrative board. If in doing so he acted

in good faith, the plaintiff can have no cause for action against him.    The court correctly ruled that the occasion was one of qualified privilege.

Another reason assigned for the direction of a verdict for the defendant was that there is no evidence of malice.

"When the court holds the communication to be entitled to the privilege, the jury should be instructed to consider and determine whether or not the defendant used the occasion for the sole reason and purpose which conferred the privilege upon his statement; and if the jury find from the surrounding circumstances, as shown by the evidence, that he did so use it solely for such reason and purpose, the verdict will be for the defendant.    But if, on the other hand, they find that he employed the occasion in bad faith, to gratify or to further some indirect or malicious motive, or for some other improper reason, the verdict will be for the plaintiff.    Where the communication is entitled to the privilege, the burden of proof is then upon the plaintiff to show actual malice in the sense of oblique design or bad faith."    Newell, Slander & Libel (4th Ed.), § 346.

As the privilege was qualified, the presumption is that the defendant acted in good faith and with a proper motive.    If there is anything in the alleged slanderous statement or in the surrounding circumstances which shows bad faith or dishonest purpose, the question is for the jury.    If there is not it belongs to the court as a matter of law.

There is nothing in the communication itself which furnishes any evidence of malice; so that if there is sufficient evidence to take that question to the jury it must be found in the surrounding circumstances. The plaintiff does not claim that the defendant was actuated by spite or ill-feeling, but relies on certain surrounding circumstances which he claims evidence bad faith.    Our examination of the record does not disclose any such evidence unless it be found in the

testimony of the plaintiff, who testified that defendant told him that he prepared the bid for Russell & Russell, the next lowest bidder, and when the contract was awarded, personally delivered it to them at Beaverton.

The defendant made positive denial that he prepared the bid and delivered the contract to Russell & Russell, or that he told the plaintiff that he had done so. But assuming that he did these things, does that show malice? The defendant had lived at Beaverton for many years and was well acquainted with the plaintiff and the Russells. At one time he had been associated with the elder Russell in the Beaverton Construction company, which engaged in the building of roads. But, long before the occasion in question, he had sold his interest in the company and retired from that business. There is nothing in the evidence showing that he had any interest in Russell & Russell's business at the time of the alleged slanderous statement. It positively appears that he had not. Under these circumstances what inference can be drawn from the fact that he prepared the bid for Russell & Russell and delivered the contract to them? It may be said that it shows an interest in their bid and furnishes a motive for acting as he did towards the plaintiff, but would the jury be justified in inferring from that fact alone that he acted in bad faith in advising the administrative board as to the plaintiff's ability to perform the contract? The board had the same information from other sources, and it is not claimed that the defendant was in any way responsible for that. In the absence of any supporting facts, are these circumstances sufficient to justify the court in submitting the question to the jury? To overcome the presumption of good faith the circumstances must be such as to show that the defendant was actuated by a bad motive, which led him to take advantage of the occasion to injure the

plaintiff.    The court should not permit dishonesty of purpose to be lightly inferred from - acts which are just as consistent with good faith as with bad faith. If the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the plaintiff has not overcome the presumption of good faith, and there is nothing for the jury.

"A plaintiff does not sustain the burden of proof which is cast upon him by merely giving evidence which is equally consistent with either view of the matter in issue.    When the presumption of malice is neutralized by the circumstances attending the utterance of the slander or the publication of the libel, the plaintiff must give further evidence of actual or express malice in order to maintain his action." Quoted with approval in *Bacon* v. *Railroad Co.,* 66 Mich. 166, 173.

There is a combination of circumstances in this case which naturally led the plaintiff to suspect that the defendant was governed by an improper purpose. But they carry no greater significance than that of suspicion.    Standing alone, they are "equally consistent with either view of the matter in issue."    Being a mere unsupported suspicion or at most a scintilla of evidence, they do not warrant the submission of the question of malice to the jury.    The court erred in refusing to direct a verdict for the defendant.

In this view of the case it is not necessary to discuss the many other questions presented by the record. The court should have directed a verdict for the defendant, and, having failed to do so, should have granted the motion for a judgment notwithstanding the verdict.    The case will be remanded to the circuit court that judgment may be entered for the defendant.    The defendant will have costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.