STERNBURGH v. ANDERSON.

1. LIBEL AND SLANDER—INFORMATION AS TO QUALIFICATIONS OF CANDI-
DATE FOR PUBLIC OFFICE NOT LIBELOUS IN ABSENCE OF MALICE.

Where candidate for township highway commissioner had pre-
viously held the office, his conduct thereof was subject of pub-
lic interest, electors had right to information as to his qualifica-
tions, and opposing candidate and others were wholly within
their rights in giving such information without rendering them-
selves liable in action for libel, in absence of malice.

2. SAME—CIRCULAR QUALIFIEDLY PRIVILEGED—MALICE.

Circular giving purported official report of plaintiff's conduct of
office of township highway commissioner and also that of his
opponent for said office, which in no way impugned plaintiff's
integrity, but at most showed that he had been less efficient
than his opponent in conducting said office, was qualifiedly
privileged, and, in absence of showing of malice, could not be
made basis of action for libel.

Error to Muskegon; Vanderwerp (John), J.
Submitted January 17, 1930. (Docket No. 120, Cal-
endar No. 34,663.) Decided March 7, 1930.

Case by John Sternburgh against Nels Anderson
and others for libel. From a judgment on directed
verdict for defendants, plaintiff brings error. Af-
firmed.

*Myrten W. Davie,* for plaintiff.

*Cross, Foote & Sessions,* for defendants.

BUTZEL, J. Plaintiff was a candidate for election
to the office of highway commissioner of the town-
ship of Norton, Muskegon county, Michigan, at the
election held on April 2, 1928. He had previously

Privilege as to words or publication relating to public officer or
candidate for public office, in action for libel and slander, see anno-
tation in L. R. A. 1918E, 43.

held the office for about 13 years. As far as the record shows, plaintiff and defendant Charles Poland each held the office for a portion of the year ending March 15, 1928. Plaintiff held it for the first four months of the year and Poland for the latter eight months. The record is not clear, but from the judge's charge it would appear that Poland had defeated plaintiff for the office for the previous year but that Poland had not been able to take office until after some litigation over the election. For that reason he only held office for the eight months preceding the election of April 2, 1928, when Poland and plaintiff were candidates for re-election. The election resulted in Poland being elected by a majority of 24 votes. Several days prior to the election a circular was printed and circulated among the electors. It is referred to in this opinion as defendants' circular. It read as follows:

"OFFICIAL REPORT
of the years Ending March 15, 1927, and March 15, 1928, in Building Roads in Norton Township.
"Expense for year ending March 15, 1927, John Sternburgh, commissioner:

| | |
|---|---|
| Paid for upkeep of two one-ton trucks and one tractor .......................$ | 1,765.70 |
| Total amount spent for gravel and cinders | 2,785.60 |
| Total amount spent for labor........... | 9,936.71 |

| | |
|---|---|
| Total amount spent during year........$14,488.01 | |

"Expense for year ending March 15, 1928:

| | |
|---|---|
| Paid for upkeep on two one-ton trucks and one tractor .......................$ | 577.81 |
| Paid for labor....................... | 3,508.60 |
| Paid for gravel...................... | 1,743.90 |

| | |
|---|---|
| Total spent by Commissioner John Sternburgh from April 1st, 1927...........$ | 5,830.31 |

Paid for upkeep on two one-ton trucks and
    one tractor ........................$  270.48
Paid for labor........................  4,083.98
Paid for gravel and cinders............  3,909.80

Total spent by Commissioner Chas. Poland
    from August 12th to March 15, 1928...$ 8,264.26
Total spent for upkeep for same trucks and
    tractor by both commissioners.........  848.29
Total spent by both commissioners for
    gravel and cinders...................  5,653.70
Total spent by both commissioners for
    labor ...............................  7,592.58

Total of all expenditures for year for both
    commissioners .....................$14,094.57

"The above figures mean this: that in the year ending March 15, 1927, that the upkeep of the two township trucks and one tractor cost the taxpayers of Norton township $1,765.70, and in the year ending March 15, 1928, it cost $848.29; a saving of $917.41 over the previous year. It means that in the year ending March 15, 1927, that $9,936.71 was spent for labor and only $2,785.60 for gravel and cinders. Whereas in the year ending March 15, 1928, there was only $7,592.58 spent for labor and $5,653.70 for gravel and cinders. In other words it cost the taxpayers $2,344.13 less to get $2,868.10 more gravel and cinders on the road, and we all know that the more material we get for money spent the better. Owing to a court action we had two commissioners in the year ending March 15, 1928, and you will also notice in this year's figures, there is a marked difference. Commissioner John Sternburgh served from April 1, 1927, to August 1, 1927, or four months; the upkeep on the trucks and tractor for the four months was $577.81 as compared with Commissioner Chas. Poland who served from August 12th until March 15, 1928, or eight months of $270.48; a saving of $307.33. You will also notice

in this year's figures that there is a larger amount of gravel and cinders for the cost of labor and under Commissioner Chas. Poland.

"Now, consider these facts backed by official figures and if you do this we are satisfied that you will reelect the present officers whom have made this wonderful showing. Besides this we have made a great many needed improvements, such as remodeling town hall, beautifying township park, building snow fences, placing lights in dangerous gullys.

"I, J. M. Davis, as auditor for year ending March 15, 1928, certify that the above figures are correct.

"Upon the above report taken from the records and signed by the auditor, we, the undersigned committee, do indorse the present offices and urge all voters to use every effort to reelect them. Everyone should work for the Norton township ticket, headed by Mr. Steinhauer for supervisor.

"N. Anderson,
Adolph Miller,
John W. Strigel,
Victor Johnson,
W. N. Vanderwater,
Gus Sand,
Ed. Poulin,
Wm. Landwier,
Mrs. W. E. Brill,
W. E. Brill,
Mrs. H. M. Coleman,
H. M. Coleman,

Mrs. Noah Cohn,
Noah Cohn,
William H. Paulson,
Martin Griesbach,
G. Adolph Griesbach.
Henry Wittkopp,
A. M. Dusenberry,
Mrs. J. Kirkpatrick,
Chas. Kittle,
H. R. Gould,
A. J. Morton,
Mrs. Robt. Greene.

"BALANCE IN DIFFERENT FUNDS.

"Contingent, $4,871.65. Improvement, $919.46. Repair, $88.27. Poor, $834.98. Cemetery, $759.69. Public Land, $495.68. Mona Beach road, $1,700. Emergency, $2,331.69. School, $12,785.41."

Almost immediately after the circulation of said circular, plaintiff's friends caused a reply circular to be printed and circulated among the electors. Plaintiff testified that he "guessed the electors got

both pamphlets the same day." The reply circular repeated defendants' circular, and added the following additional comment:

"If Mr. Sternburgh spent $577.81 in placing trucks and tractor in good condition it would not be necessary for Mr. Poland to spend money on such upkeep and he should receive no credit for economy.

"The so-called 'official report' is misleading in many particulars, viz.: it states that Mr. Sternburgh spent $1,743.90 for gravel during four months of 1927 while Mr. Poland spent $3,909.80 in eight months in office.

"This fact is: Bills from the company which furnished the gravel shows that $3,903.80 was spent by both commissioners. Mr. Poland thus being given credit to which he is not entitled.

"Mr. J. M. Davis certifies to the correctness of the figures given in so-called 'official report' but audited only the 1928 account, therefore he certified to correctness of figures given for 1927 which he did not audit.

"Why is not the 'official report' a full report?

"Why not inform the voters how much Mr. Poland received for his services?

"Why not tell what Mr. Steinhauer received for his services as supervisor?

"The lights placed in 'dangerous gullies' were placed and paid for by the county road commission. Not by the township officials as stated in the 'official report.'

"Why did Mr. Davis certify to the correctness of two years' figures when he only audited one year?

"Why did Mr. Poland, as commissioner, build a gravel road along Mr. Steinhauer's property at an expense of about $1,000 when no appropriation was voted by the people? This action was contrary to law.

"Why does not the 'official report' show a statement of outstanding unpaid accounts? The 'official

report' shows a balance of road improvement fund of $919.46. How can $1,700 be spent on the Mona Beach road out of that amount?

"MR. AND MRS. VOTER.

"Do not let pre-election statements and incomplete 'reports' blind your vote for officers who have the welfare of the entire township at heart, men who have been tried and true, who have proven their worth to you.

"Contrast the record of the Antisdale administration with the Steinhauer administration. Which one put in your paved roads, most of your improved gravel and cinder roads, the Lake Harbor breakwaters and countless other major improvements? Can the present administration boast accomplishments to compare with them?

"Elect officers who will do things. Send a man to the board of supervisors who will see that things are done for you, a man who is competent to carry the prestige of Norton township to a high place in the county. A weak man on the board of supervisors will cost you money; a strong man will make money for you. Elect Mr. Sternburgh who will build only roads for which money has been appropriated by the voters.

"Elect the Republican ticket and you will get a complete report at the end of the year.

"Elect the Republican ticket and all township board meetings will be open to the public and not partly held in private homes as has been done in the past year.

"CHARLES PELFRESNE,
"Chairman of Republican
Committee."

The township is overwhelmingly Republican, so that there was no split on old party lines. Plaintiff ran on the so-called "Republican Ticket" and Poland ran on the so-called "Norton Township Ticket." Defendants' circular, which is the basis

of this libel suit, was prepared by John J. Steinhauer, the leader of the Norton township ticket, from the records of the township treasurer. The figures were certified to by defendant J. Melvin Davis, who signed as auditor for the year ending March 15, 1928. Davis testified that the figures were taken from the official report of Norton township for the year 1928, and stated that the figures were correct with one small exception, although he could certify only for the year ending April, 1928. Davis was not an auditor by profession but stated that he assisted in the settlement of the figures and had experience at one time as secretary and treasurer.

Defendant Steinhauer stated that he prepared the figures with the assistance of others, and that he took them from the official records of the township; that he was instrumental in preparing and securing signatures to the circular.

The treasurer of the township testified that the receipts and disbursements for the year ending March 15, 1927, were each $11,053.67, and thus balanced one another. Notwithstanding this, there was a balance on hand of $1,454.76. It would appear that this was due to moneys having been taken from some account after the statement was made up. A public accountant testified that the correct figure for the amount spent by plaintiff for the year ending March 15, 1927, was $12,495.30, and that there were some discrepancies in the figures in defendants' circular. It would appear that the auditor allocated the various items in a different manner than that adopted by defendants. Upon cross-examination, however, when the totals were given, he gave the same figures as are given in defendants' circular. It further appears that the totals included some items that should have been excluded. The differ-

ences are not very large and the mistake could readily be made from the manner in which the books were kept when examined by persons who were inexperienced in auditing. There are some slight errors in defendants' circular that would operate in favor of plaintiff and against Poland, and that would negative malice. The discrepancies are not sufficient in amount to warrant a belief that the errors were intentionally or deliberately made, nor are they large enough to justify an inference that they were maliciously made.

Plaintiff has brought suit for libel against all but two of those who signed defendants' circular, as well as against the auditor, Poland, and Steinhauer. He claims that defendants' circular is a false and malicious libel intended to bring plaintiff into public disgrace and defeat him in the election; that it was meant to imply or state that plaintiff had padded payrolls in his work as highway commissioner, and that it has injured his good name, credit, and reputation. Aside from the fact that plaintiff had been defeated for the office by 24 votes, he only introduced testimony to show that one boy and one girl did not think as much of him after the election as they had before the election. He did not show that even this loss of reputation from these two parties had been caused by the circular. A careful reading of the circular in no way impugns plaintiff's integrity. At the most, it would show that Poland had been more efficient in the conduct of the office than plaintiff had been. Plaintiff's circular refuted the statements made in the first circular.

The circuit judge directed a verdict for defendants on the ground that the statements made in the circular were qualifiedly privileged, and there was absolutely no showing of malice. Plaintiff bases

his claim for appeal upon a number of assignments of error. The only one that need be considered, and around which the others revolve or are included, is that the judge erred in directing the verdict.

Plaintiff was running for public office. His conduct of this office when he previously held it was a subject of public interest. The electors had a right to information as to his qualifications, and the defendants were wholly within their rights in giving it to them. In so doing, their communication was qualifiedly privileged. It was, therefore, incumbent upon the plaintiff to show malice on the part of defendants. This he absolutely failed to do. The record discloses nothing in the alleged libelous statement or in the surrounding circumstances that showed bad faith or dishonest purpose. There were no facts to be submitted to the jury. The question was one of law for the trial court to determine. *Westerhouse* v. *DeWitt*, 215 Mich. 295; *Raymond* v. *Croll*, 233 Mich. 268; *Fortney* v. *Stephan*, 237 Mich. 603, 610.

The judgment of the lower court is affirmed, with costs.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.