DOMESTIC LINEN SUPPLY & LAUNDRY COMPANY v STONE

Docket No. 54540. Submitted November 12, 1981, at Detroit.—Decided December 16, 1981.

The Romulus City Council, upon the recommendations of the city's mayor and purchasing director, terminated a long-standing relationship with Domestic Linen Supply & Laundry Company and awarded a contract for the supply of uniforms and linen service to Custom Uniform, Inc. The recommendations were in the form of a memo and statements presented at two regular city council meetings. Domestic Linen brought an action against Arnold Stone, president of Custom Uniform, James C. Stewart, the mayor, Ray Cantrell, the purchasing director, and Custom Uniform alleging, in four counts, defamation against all the defendants except Stewart, and intentional interference with contract, conspiracy to accomplish unfair competition, and conspiracy and combination in restraint of trade against all the defendants. The Wayne Circuit Court, John R. Kirwan, J., found that any statements or writings of defendant Stewart and Cantrell made or read at the council meetings were absolutely privileged and should not be admitted into evidence. Summary judgment of no cause of action was entered in favor of Stewart and Cantrell and the plaintiff appeals. The plaintiff alleges that the trial court erred in holding that the statements of nonmembers of the city council carried an absolute privilege and that the privilege applies to bar admission of the statements when offered to prove torts other than defamation. *Held:*

1. The nature of the privilege changes as the nature of the interest protected and the nature of the tort changes. The trial court erred in ruling that the statements and writings were absolutely privileged and therefore inadmissible for any purpose.

2. Statements made in the course of legislative proceedings are privileged in regard to an action for defamation, and this

References for Points in Headnotes

[1] 81 Am Jur 2d, Witnesses § 141.
[2, 5] 74 Am Jur 2d, Torts § 43.
[3, 4] 50 Am Jur 2d, Libel and Slander §§ 193, 194, 220-228.

privilege has been extended to communications made in meetings of subordinate and quasi-legislative bodies. While matters which are executive only and not legislative are not always absolutely privileged, in this case the mayor and purchasing director were acting within the scope of their duties and their communications concerned matters under consideration at a legislative session. Thus, their statements carried an absolute privilege as regards an action for defamation and the trial court did not err in holding that the absolute privilege constituted a defense to that portion of the complaint.

3. The statements are admissible into evidence in an attempt to prove the other counts in the complaint.

Affirmed in part; reversed in part and remanded.

1. EVIDENCE — PRIVILEGED STATEMENTS — RULES OF EVIDENCE.

Statements that are privileged are inadmissible into evidence because they are regarded as too private and confidential to be disclosed in court (MRE 501).

2. TORTS — DEFENSES — PRIVILEGE.

Privilege, or immunity, may be asserted as a defense to certain torts so that acts which would otherwise be tortious are permissible because of the circumstances in which they occur.

3: TORTS — DEFAMATION — PRIVILEGE — LEGISLATIVE PROCEEDINGS.

Statements made in the course of judicial or legislative proceedings are considered privileged even though they might otherwise be defamatory; this absolute privilege has been extended in Michigan to communications made in meetings of subordinate and quasi-legislative bodies, including statements made by city council members in the course of their duties.

4. TORTS — DEFAMATION — PRIVILEGE — LEGISLATIVE PROCEEDINGS.

Communications regarding matters which are executive only and not legislative do not always carry an absolute privilege; however, communications made by a mayor and a city purchasing director at a public city council meeting concerning matters about which they were called upon to comment at the legislative session were absolutely privileged in relation to a charge of defamation.

5. TORTS — DEFENSES — PRIVILEGE.

It is appropriate to treat the defense of privilege differently as that defense is applied to different torts.

*Levin, Levin, Garvett & Dill* (by *Jeffrey A. Heldt),* for plaintiff.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Thomas G. Herrmann),* for defendants Cantrell and Stewart.

Before: M. F. CAVANAGH, P.J., and ALLEN and MacKENZIE, JJ.

ALLEN, J. Plaintiff appeals by leave granted on December 10, 1980, from a judgment of no cause of action in favor of the defendants Stewart, Mayor of the City of Romulus, and Cantrell, City Purchasing Director.

Plaintiff, for several years before 1976, supplied uniforms and linen service for the City of Romulus. Early in 1976, Purchasing Director Cantrell terminated the relationship and awarded the contract to defendant Custom Uniform.

When plaintiff learned of this, it petitioned the city council for competitive bidding. The request was placed on the council's agenda for May 25, 1976. Purchasing Agent Cantrell published a memo to the council dated May 20, 1976, stating:

"In the past, we have experienced many difficulties with Domestic Linen Company. Their services were not dependable nor were the quality of uniforms and linens commensurable with the price we were paying.

"If you will check your warrant for the past year, we were paying from $900.00 to in excess of $1200.00 per month to Domestic.

"The new company Custom Uniform will give a better quality uniform and a more prompt dependable service for $752.60 monthly.

"We are therefore, changing from Domestic Linen to Custom Uniform. As you can see, the savings are substantial."

At the May 25, 1976, meeting, plaintiff merely requested that the contract be put up for bidding. Cantrell then complained that plaintiff had failed to replace the uniforms every 18 months as agreed upon and that the quality of service was poor. Specifically, he stated:

"A man turns in a uniform. It may be ripped or the pockets may be torn out, something to that effect, he's supposed to tie it in a knot. Some of the uniforms come back still tied in a knot.

"If they are repaired, they are repaired in the manner that they are very badly creased or, you know, they are not justifiable, I'd say, for our employees to wear. They are in very bad condition.

\* \* \*

"One of the drivers, the driver, told Mr. Utsie, which is the foreman down at the DPW, the other day, that when he started working at Domestic, approximately two years ago, that the uniforms were in very poor shape at that time and he was ashamed to even pick them up or deliver them."

He reiterated his position later in the meeting:

"I don't think price is a big thing because what our employees have, you know—went through in the last few years—it's not because of the price, it is the quality. It is very bad uniforms, as far as I am concerned. Their service is very poor, as far as I am concerned, and this is what I am out for."

After the council voted to require bidding on the contract, Mayor Stewart continued the discussion with respect to the bill submitted by plaintiff. He stated:

"Well, the thing is, though, I just want to point out some of these figures to you that where you were trying to fool the council into thinking—you brought your

three lowest bills in and presented them to the council. You didn't bring your highest bills in, so all I want to do is point this out to the council so they wouldn't be fooled into thinking that the department head had lied about the bills."

At the June 29, 1976, meeting of the city council, Cantrell recommended the contract be awarded to Custom Uniform. He stated:

"Mr. Chairman, council members. The first item on my report is Bid 76-25 which is the linen service.

"It is the recommendation of Mr. Paul and myself that we award this to Custom Uniform for the total amount of $172.85 per week. There was a difference in price of approximately $17 between Domestic and Custom Uniform, which we only had two bids on it.

"Due to the fact that we've had such poor service with Domestic in the past years—and this is one of the primary reasons that we went out to bid on this—we can't see any justification in awarding it to Domestic at this time."

Council accepted the recommendation and awarded the contract to Custom Uniform with only one dissenting vote.

In a four-count complaint, plaintiff alleged five causes of action as follows:

Count I: *Defamation against all defendants except Mayor Stewart.*

Count II: *Intentional interference with contract and interference with economic expectancy, against all defendants.*

Count III: *Unfair competition, conspiracy to accomplish the same, as to all defendants.*

Count IV: *Conspiracy and combination in restraint of trade (MCL 445.701; MSA 28.31) against all defendants.*

Defendants Cantrell and Stewart moved to bar the admission into evidence of any statements or writings made or read at the council meetings, arguing that such communications were absolutely privileged. Plaintiff stipulated that without these statements it could not prove its case. The lower court found the statements were absolutely privileged and entered summary judgment in favor of the mayor and purchasing director as to all four counts. Proceedings against the remaining defendants have been stayed pending appeal.

In this appeal, plaintiff claims that the trial court erred in holding that the statements made at a city council meeting by a nonmember of the council carried an absolute privilege. Plaintiff also asserts, in an issue of first impression for this Court, that the lower court erred in holding that the doctrine of privilege applies to bar admission into evidence of the challenged statements when they are offered to prove torts other than defamation. While we disagree with plaintiff's first contention, we believe the trial court erred as alleged in the second.

To better understand both issues, a preliminary discussion of privilege is helpful. "Privilege" has different meanings in the law of evidence and the law of torts.[1] For evidentiary purposes, statements that are privileged are inadmissible into evidence because those statements are regarded as too private and confidential to be disclosed in court. See generally MRE 501. Thus at common law and by

[1] Related to these entirely different concepts of privilege is the constitutional protection granted to members of the United States Congress and the State Legislature by US Const, Art I, § 6, and Const 1963, art 4, § 11. These provisions bar anyone from questioning United States or state legislators at any time concerning any speech or debate in those forums. The constitutions afford no similar protection for city council members.

statute, confidential communications to a clergyman may not be revealed in court unless the person making the communication waives his right to confidentiality. *Wirtanen v Prudential Ins Co of America,* 27 Mich App 260; 183 NW2d 456 (1970), MCL 600.2156; MSA 27A.2156. A similar right of confidentiality has been protected when the communication is between a patient and his doctor. MCL 600.2157; MSA 27A.2157, between client and attorney, *Parker v Associates Discount Corp,* 44 Mich App 302; 205 NW2d 300 (1973), and between spouses, MCL 600.2162; MSA 27A.2162.

"Privilege" has a much different meaning in the law of torts. For certain torts, privilege may be asserted as a defense so that acts that would otherwise be tortious are permissible because of the circumstances in which they occur. Privilege, or immunity as it is often called, permits a defendant freedom of action because his own interests or the interests of the public at large are best served by protecting the act, even at the expense of damage to the plaintiff. Prosser, Torts (4th ed), § 16, p 98. Thus a person using reasonable force to prevent any harmful or offensive body contact is not liable for assault and battery. Prosser, § 19, pp 108-112. Similarly, use of reasonable force is permitted in defense of property. *Tumbarella v Kroger Co,* 85 Mich App 482, 492; 271 NW2d 284, 289 (1978).

Different privileges also are available for the torts of defamation, libel and slander, and for intentional interference with business relations. For each tort, certain actions are considered protected whenever public policy dictates that that conduct should be protected to promote the public or certain individuals' good even at the expense of the injured plaintiff. As the nature of the interest

protected changes and as the tort changes, so the nature of the privilege varies.

In the case at bar, the trial court ruled that the statements and writings made and read at a city council meeting were absolutely privileged and hence inadmissible into evidence. This ruling failed to distinguish between a "privilege" under the law of evidence, which protects some confidential communication between individuals, and a "privilege" in the law of torts, which protects certain actions by making the circumstances in which they were performed a defense to otherwise actionable torts. Nothing said at a public meeting of the Romulus City Council should be regarded as a confidential communication that should be inadmissible into evidence, as distinguished from being a defense or bar to an otherwise permissible action. Accordingly, we hold that the lower court erred in ruling that the statements and writings were inadmissible into evidence. Both could be offered into evidence by the plaintiff in an attempt to prove the four torts alleged: defamation, intentional interference with a contract, unfair competition and combination in restraint of trade. The court did not err in finding that there was an "absolute privilege" applicable to Count I, but did err in extending the privilege to Counts II, III and IV. The extent to which those who made the communications are immune or privileged from liability varies with the scope of the defense for each tort alleged.

Privilege is most commonly discussed in the law of defamation. Under the common law, statements made in the course of judicial or legislative proceedings are considered privileged and nonactionable even though they might otherwise be defamatory. The Supreme Court discussed the rationale

behind this defense in *Bacon v Michigan Central R Co,* 66 Mich 166, 169-170 (1887):

"The great underlying principle upon which the doctrine of privileged communications stands, is public policy. This is more especially the case with absolute privilege, where the interests and necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights and to suffer loss for the benefit of the common welfare."

Communications deemed absolutely privileged are those of such importance that they are not actionable even if spoken with malice. *Lawrence v Fox,* 357 Mich 134, 140; 97 NW2d 719 (1959). A lesser degree of protection is afforded those statements that carry a qualified protection, as those are actionable if a speaker's malice is shown. *Lawrence,* 141-142, *Bolton v Walker,* 197 Mich 699, 706-707; 164 NW 420 (1917).

The circumstances that make a communication absolutely privileged are traditionally limited to three: legislative proceedings, judicial proceedings, and communications of naval and military officials. *Raymond v Croll,* 233 Mich 268, 272; 206 NW 556 (1925). The legislative privilege has been extended in Michigan to communications made in meetings of subordinate and quasi-legislative bodies. *Gidday v Wakefield,* 90 Mich App 752, 755; 282 NW2d 466 (1979). It is clear that statements made by city council members in the course of their duties carry an absolute privilege. *Wachsmuth v Merchants National Bank,* 96 Mich 426; 59 NW 9 (1893). Similarly, a mayor's communication to a council, explaining his veto message, has been

considered absolutely privileged. *Trebilcock v Anderson,* 117 Mich 39; 75 NW 129 (1898). And in *Bolton, supra,* words spoken by an *ex officio* member of the Board of Estimates during a discussion of matters of public concern at a regularly convened meeting were held to be absolutely privileged. See generally *Gidday, supra,* in which this Court held that comments made at a meeting of the Board of Trustees of Highland Township were cloaked with absolute privilege.

Matters which are executive only and not legislative do not always carry the absolute privilege. Thus in *Tocco v Piersante,* 69 Mich App 616; 245 NW2d 356 (1976), an assistant attorney general who, acting in the course of his official duties, prepared a film on organized crime, was held to have only a qualified privilege. Similarly, in *Raymond, supra,* a budget director reporting to a state administrative board was held to have only a qualified immunity.

In the case at bar, the mayor and purchasing director were members of the city administration who were acting within the scope of their duties when they made the challenged communications at a public meeting of the city council. These communciations concerned matters about which the officials were called upon to comment at a legislative session. We hold that their statements were clothed by the legislative absolute immunity afforded by *Wachsmuth* and its progeny.

Plaintiff argues that the mayor's statements, which were made after the council voted on May 25, 1976, should not be privileged as the matter was no longer properly before the council. We do not believe the scope of legislative immunity should be so narrowly interpreted. Comment on matters that have been open for discussion is not

improper as soon as a vote has been taken on the matter. Here, where the mayor had valuable insights to offer regarding the matter that had just been discussed and voted on, and would again be considered by the council, we believe that the mayor's statements were absolutely immune.

We also reject plaintiff's argument that statements of the purchasing director were not privileged as that official was not an elected or a high-ranking official in the city government. While plaintiff's argument might have had some force if the statements had been made in the course of the daily duties of the director, here, the statements were made before the city council acting in a legislative capacity. These circumstances are distinguishable from those in *Tocco* and *Raymond, supra,* in which public officials offered statements to nonlegislative bodies and those statements carried only a qualified privilege.

We conclude that for defamation purposes, as set forth in Count I, the statements of the mayor and purchasing director at the city council meeting carried an absolute privilege, and thus constitute a defense. However, those same statements may be admitted into evidence in an attempt to prove the remaining counts in the complaint. But the fact that such statements were made does not in itself prove the remaining alleged causes of action. Each of the remaining business torts alleged to have been committed requires extraneous proof which plaintiff may, or may not, be able to establish.

Our conclusion in this appeal is based on our belief that it is appropriate to treat the defense of privilege differently as that defense is applied to different torts. The broad defense of absolute privilege in legislative affairs grew out of the common-

law immunity from actions in defamation. The business torts, for which entirely different causes of action exist, carry with them their own defenses. While privilege or justification is among those defenses, we do not believe that the defense coincides with that for defamation actions any more than the privilege of self-defense applies to business related torts.

Affirmed as to Count I; reversed and remanded as to Counts II, III and IV. No costs, neither party having prevailed in full.