*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENDALL WILLIAMS and THE WILLIAMS
FIRM PC,

          Plaintiffs-Appellants,

v

CHA'RIS LEE and LEE LEGAL GROUP PLLC,

          Defendants-Appellees.

UNPUBLISHED
November 19, 2024
1:39 PM

No. 367900
Genesee Circuit Court
LC No. 22-116674-CZ

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

In this defamation action, plaintiffs, Kendall Williams and The Williams Firm, PC, appeal as of right the trial court's order granting defendants, Cha'ris Lee and Lee Legal Group, PLLC, summary disposition under MCR 2.116(C)(8). For the reasons stated in this opinion, we reverse and remand for further proceedings.

## I. BASIC FACTS

Plaintiffs provided legal representation to the Flint Board of Education (FBOE) and Flint Community Schools (FCS) for over twenty years. During that time, plaintiffs "essentially performed" the duties of general counsel for FCS and board counsel for FBOE. They provided monthly billing statements for the legal services provided. Plaintiffs contend that, during the past ten years, they had not received any correspondence disputing or questioning their billing statements, which they described as "transparent, honest billing statements." They also asserted that they always informed the FBOE "of the nature and extent of the legal services" that they provided to FCS.

At some point, plaintiffs stopped representing FBOE and FCS. Thereafter, FBOE and FCS retained defendants as legal counsel. In their complaint, plaintiffs alleged that defendants "published falsehoods" about them, "accusing [them] of being, in essence, crooked and thieving lawyers, double-billers, and attorneys who steal money from their clients and engage in moral turpitude" and that stating that they cheated FCS "out of money," which deprived "the children/students of funds for their education." Specifically, plaintiffs alleged that defendants

-1-

made such defamatory statements to a reporter before September 2021, at a duly convened meeting of the FBOE held on October 13, 2021, and to reporters sometime after the board meeting. They alleged that, at the board meeting, Lee stated that she was investigating allegations that plaintiffs had charged FCS exorbitant legal fees for years, that his billing statements reflected excessive staffing, unnecessary work, conflicts of interest, double-billing, and the likely breach of plaintiffs' fiduciary duties. Lee added that, although the "average" lawyer for a school district would typically bill "maybe $120,000 per year," plaintiffs billed FCS an average of $750,000 per year, with the legal bill sometimes as high as $1,000,000 per year. She also suggested that Williams had colluded with former board members in order to continue excessively billing FCS and that he would retaliate against anyone who questioned plaintiffs' legal fees. Plaintiffs contended that the above statements were false, that Lee knew that they were false when she made them, and that she entertained serious doubts as to their truthfulness when she made them. Plaintiffs also stated that Lee had an "ulterior motive" for making the defamatory statements, but did not identify that motive in their complaint.

Based upon Lee's recommendation at the school board meeting, the FBOE voted unanimously in favor of hiring Plante Moran to perform a forensic investigation of plaintiffs' legal bills and of filing a complaint against plaintiffs with the Attorney Grievance Commission. Following the board meeting, Lee's comments were quoted by newspaper reporters in articles published October 14, 2021 and October 15, 2021. Plaintiffs also alleged that Lee repeated the above statements to newspaper and television reporters. On October 25, 2021, plaintiffs demanded that defendants issue a retraction letter; however, no retraction was issued.

Thereafter, plaintiffs filed a three-count complaint, alleging defamation, intentional infliction of emotional distress, and invasion of privacy—false light. In lieu of filing an answer, defendants filed a motion for summary disposition under MCR 2.116(C)(8). Defendants argued that the absolute privilege applicable to allegedly defamatory statements made during quasi-legislative proceedings applies to the statements identified in plaintiffs' complaint. More specifically, defendants contended that Lee made the statements "as a public official while carrying out her official duties, in a quasi-legislative setting, and regarding a matter of public concern." Alternatively, defendants asserted that Lee's statements were protected by qualified privilege and that plaintiffs could not overcome the qualified privilege because they could not show that the statements were made with actual malice.

In response, plaintiffs argued that absolute immunity did not apply to defendants because it only applied to "a judge judging, a prosecutor prosecuting," and a legislator's passing a law or budget. Plaintiffs stated that neither Lee nor the FBOE were engaged in a "legislative act" when Lee made her statements at the meeting. Instead, Lee was speaking regarding her investigation, which is an investigative function for which there is no absolute privilege. Moreover, plaintiffs pointed out that Lee "is simply a private attorney elected to no office whatsoever." Moreover, plaintiffs argued that even if Lee's comments at the meeting were privileged, defendants were not entitled to absolute immunity for the defamatory statements that they made to newspaper and television reporters before and after the meeting. Plaintiffs stated their belief that the allegations in the complaint were sufficient, but indicated their intent to amend should the pleadings need "clarification or amplification."

In their reply brief, defendants asserted that absolute privilege applied because Lee made the statements at the FBOE meeting "in her official role as counsel to the FBOE, while carrying out her official duties, and most importantly, they were made regarding an ongoing investigation into the legal fees charged to a public school district," which was an unresolved public matter.

At a hearing on the motion, the parties argued consistently with their briefs. Additionally, plaintiffs noted that they had "an absolute right to amend" their complaint if they had "to plead evidence" in support of their allegations. Approximately 17 months after the hearing, the trial court entered a written opinion and order granting summary disposition under MCR 2.116(C)(8). The court reasoned that the allegedly defamatory statements that Lee made at the board meeting and that were repeated in newspaper articles were protected by the absolute privilege doctrine. Further, with regard to the statements made outside the board meeting, the court determined that "the allegations stated in Plaintiffs' complaint do not support a finding that a rational finder of fact would find actual malice by clear and convincing evidence." This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Plaintiffs argue that the trial court erred by granting defendants' motion for summary disposition under MCR 2.116(C)(8). We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "When deciding a motion brought under this section, a court considers only the pleadings." *Id*. at 119-120. The motion may be granted only when the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 119.

Under MCR 2.116(I)(5), if the trial court grants summary disposition under subrule (C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." Here, in their response to summary disposition under MCR 2.116(C)(8) and at the hearing on defendants' motion, plaintiffs noted that they would amend their complaint should the pleadings be deemed insufficient. At that time, they could only amend "by leave of the court or by written consent of the adverse party." MCR 2.118(A)(2). "Leave shall be freely given when justice so requires." *Id*. "A motion to amend ordinarily should be granted." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

## B. ANALYSIS

"A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." *Kefgen v Davidson*, 241 Mich App 611, 617; 617 NW2d 351 (2000). In order to establish a defamation claim, a plaintiff must establish:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Reighard v ESPN, Inc*, 341 Mich App 526, 538; 991 NW2d 803 (2022).]

The statements that the plaintiff considers to be defamatory must be specifically identified in the pleadings. *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 52-53; 495 NW2d 392 (1992).

At issue in this case is whether defendants made unprivileged communications to a third party. We first consider whether defendants were absolutely privileged to make the allegedly defamatory statements regarding plaintiffs. "Communications deemed absolutely privileged are not actionable, even when spoken with malice." *Kefgen*, 241 Mich App at 618. The purpose of absolute privilege is "to allow public officials to speak freely in the course of their official duties without fear of legal repercussions." *Id*. at 621. The privilege, however, "is narrow and applies only to communications regarding matters of public concern." *Id*. Here, the parties do not dispute that the allegedly defamatory statements were made regarding a matter of public concern. Indeed, the allegedly defamatory statements related to Lee's investigation into whether her clients, FBOE and FCS, had been improperly overcharged for legal services by plaintiffs. Whether a public school district was improperly charged for unnecessary and exorbitant legal services is a matter of public concern.

Absolute privilege does not apply to all communications regarding matters of public concern. Generally, it has "applied to communications made during legislative and judicial proceedings and to communications by military and naval officers." *Id*. Moreover, it has been "extended to communications made by a public official in furtherance of an official duty during proceedings of subordinate legislative and quasi-legislative bodies." *Id*. Relevant to this case, "[a] duly convened meeting of a school board may constitute a proceeding of a quasi-legislative body that allows for the application of the absolute privilege doctrine. *Id*. at 618-619.

Here, at least some of the allegedly defamatory statements were made by Lee during a duly convened meeting of a school board. Yet, as noted by the *Kefgen* Court:

> just as a public official's attendance at a duly convened legislative or quasi-legislative proceeding does not afford him an invitation to undertake a slanderous campaign against whomever he pleases, concerning whatever he pleases, private citizens are not absolutely privileged to engage in unfettered speech simply because the statements are made during a legislative or quasi-legislative proceeding." [*Id*. at 622 (citations omitted).]

Consequently, although some of Lee's statements were made during a proceeding that allows for the application of the absolute privilege doctrine, it still must be determined whether she qualifies as a "public official" who made the allegedly defamatory statements in "furtherance of an official duty." *Id*. at 618.

As an initial matter, plaintiffs direct this Court to several federal opinions addressing the scope of absolute privilege for judges, prosecuting attorneys, and for legislators in cases that do not involve defamation. See, e.g., *Dennis v Sparks*, 449 US 24; 101 S Ct 183; 66 L Ed 2d 185 (1980); *Forrester v White*, 484 US 219, 229; 108 S Ct 538; 98 L Ed 2d 555 (1988); *Imbler v Pachtman*, 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976); and *Acevdeo-Garcia v Vera-Monroig*, 204 F3d 1, 7-8 (CA 1, 2000). However, defendants are not claiming that they are absolutely privileged because they are judges, prosecuting attorneys, or legislators. Instead, they assert that "Lee was acting as a public official" in furtherance of her official duties when she made the allegedly defamatory statements at the board meeting. As a result, the caselaw discussing the scope of absolute privilege as it relates to judges, prosecuting attorneys, and legislators is not dispositive to any matters actually at issue in this case.

Plaintiffs also suggest that absolute privilege does not apply because neither defendants nor the FBOE were engaged in "legislative activity." In support, and without directing this Court to the relevant page numbers, plaintiffs cite *Timmis v Bennett*, 352 Mich 355; 89 NW2d 748 (1958); *Kefgen*, 241 Mich App 611; *Tocco v Piersante*, 69 Mich App 616; 245 NW2d 356 (1976), abrogation recognized by *Frohriep v Flanagan*, 278 Mich App 665; 754 NW2d 912 (2008);[1] *Raymond v Croll*, 233 Mich 268; 206 NW2d 556 (1925); and *Froling v Carpenter*, 203 Mich App 368; 512 NW2d 6 (1993). "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). By failing to adequately brief this argument, plaintiffs have abandoned it. And, even if the argument was not abandoned, the cases cited do not indicate that privilege only applies to "legislative activity." Instead, they state the general rule that absolute privilege applies to judicial proceedings, legislative proceedings, and certain statements by the military. See *Timmis*, 352 Mich at 362; *Kefgen*, 241 Mich App at 618; *Tocco*, 69 Mich App at 629-630, 634; *Raymond*, 233 Mich at 272; *Froling*, 203 Mich App at 371.

We conclude that the resolution of this matter turns on Michigan caselaw addressing the scope of absolute privilege as it relates to defamation cases. Specifically, we must determine whether a lawyer in private practice retained by a school district and its board to provide legal services qualifies as a public official for purposes of applying absolute privilege. Caselaw addressing whether a public official is absolutely immune for defamation do not define who qualifies as a "public official." Several cases, however, are illustrative.

In *Gidday v Wakefield*, 90 Mich App 752, 754; 282 NW2d 466 (1979), this Court determined that the defendant, who was both a township clerk and a member of the township's board of trustees, was a public official. The *Gidday* Court noted that:

---

[1] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

In *Wachsmuth v Merchants' National Bank*, 96 Mich 426; 56 NW 9 (1893), it was held that a resolution offered by a city council member to the council, relating to a matter within the member's duty, was absolutely privileged. In *Trebilcock v Anderson*, 117 Mich 39; 75 NW 129 (1898), a mayor's communication to a city council concerning a veto was deemed absolutely privileged. In *Bolton v Walker*, 197 Mich 699; 164 NW 420 (1917), words spoken by an Ex officio member of the Board of Estimates of the City of Detroit during a discussion of a matter of public concern at a regular meeting of the board were held absolutely privileged. In *Powers v Vaughan*, 312 Mich 297, 20 NW2d 196 (1945), a report issued by the Detroit Department of Health was deemed absolutely privileged. [*Gidday*, 90 Mich App at 755-756.]

The *Kefgen* Court identified additional cases involving the application of absolute privilege for a public official, including:

> *Chonich v Ford*, 115 Mich App 461, 465–466; 321 NW2d 693 (1982) (communication by official on the Wayne County Community College Board of Trustees regarding a doctor's alleged improper use of funds was absolutely privileged where the statement was made during the administration of the school's financial matters); *Domestic Linen Supply & Laundry Co v Stone*, 111 Mich App 827, 836, 314 NW2d 773 (1981) (statements of mayor and city purchasing director regarding the plaintiff at a city council meeting were made when they were called on during a legislative session to comment on the plaintiff's performance); see [*Stewart v Troutt*, 73 Mich App 378, 384; 251 NW2d 594 (1977)] (mayor's statement at a city council meeting regarding the plaintiff's failure to pay certain property taxes was made in the course of carrying out an official duty) [*Kefgen*, 241 Mich App at 620-621.]

See also *Froling*, 203 Mich App at 372 (statements by city council member "during the course of legislative proceedings" and "in the course of their [official] duties" were absolutely privileged). In contrast, in *Kefgen*, this Court held that the absolute privilege was not applicable because (1) the defendants were "private citizens as opposed to public officials [speaking] in the course of their official duties" and (2) the statements that the defendants made were not "made in resolution of a matter of public concern." *Id*. at 619-620.

In sum, the following have been determined to be "public officials" for purposes of applying absolute privilege: city council members; mayors; members of public boards, including school boards; and city purchasing directors. But private individuals, unsurprisingly, have not been deemed to be public officials merely by virtue of speaking during a legislative or quasi-legislative proceeding.

On appeal, plaintiffs argue that Lee is a "private attorney" who has not been elected to any public office. They also assert that she is not a "governmental official" or a "public servant" because she is not employed by FBOE. Rather, they assert that she and her law firm have merely been retained to provide legal services to FBOE and FCS pursuant to a contractual agreement. In response, Lee suggests that she is a "public official carrying out a public duty" because she was acting in her "official capacity" as board counsel/legal counsel while carrying out her "official

duties." We conclude that merely being hired to perform a job by a public school district or a public school board does not transform a private attorney into a public official. Unlike the defendants identified as public officials in the above cases, Lee is not an elected official, she is not an employee of the FCS or the FBOE, nor has she been appointed to serve in a public role by the FCS or the FBOE. Instead, she and her law firm have contracted to provide legal representation to FCS and FBOE pursuant to the terms of a representation agreement. Given the record in this case, she simply is not a public official. As a result, absolute immunity is inapplicable. The trial court, therefore, erred by determining that plaintiffs' complaint was barred by absolute privilege.

That does not end the inquiry. Defendants alternatively argued that they were protected by a qualified privilege. "The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Nuyen v Slater*, 372 Mich 654, 659; 127 NW2d 369 (1964) (quotation marks and citation omitted). A party claiming defamation "may overcome a qualified privilege only by showing that the statement was made with actual malice." *Prysak v RL Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992).

> Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. "Reckless disregard" is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published. [*Ireland v Edwards*, 230 Mich App 607, 622; 584 NW2d 632 (1998). (quotation marks and citation omitted).]

The party claiming defamation "bears the burden of showing actual malice by clear and convincing evidence." *Id*. at 615. At the summary disposition stage, "a court must consider whether the evidence is sufficient to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Id*. at 622. General allegations of malice are insufficient to establish a genuine issue of material fact. *Gonyea v Motor Parts Fed Credit Union*, 192 Mich App 74, 79-80; 480 NW2d 297 (1991).

In this case, plaintiffs made general allegations that defendants acted with malice, stating only that when the statements were made defendants "knew" that they were false or that they "entertained serious doubts" as to the truth or falsity of the allegations. As a result, their pleadings were insufficient. However, plaintiffs sought to amend their pleadings under MCR 2.118 should they be deemed to be insufficient. The trial court did not address plaintiffs' argument as it related to the amendment of their complaint to address any deficiencies in the pleadings. Given that leave to amend should be freely given, MCR 2.118(A)(2), we remand to the trial court to consider whether leave to amend is warranted.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs as the prevailing party. MCR 7.219(A).

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett